**Evelyn PLUMMER, Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security.**

**No. 98–1825.**

United States Court of Appeals, Third Circuit.

Argued March 1, 1999.

Decided Aug. 5, 1999.

---

**425**

Before: ALITO and McKEE, Circuit Judges, and SCHWARTZ, District Judge.*

## OPINION OF THE COURT

SCHWARTZ, Senior District Judge.

Evelyn Plummer asserts error in the denial of her application for social security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. The District Court granted summary judgment to the Commissioner of Social Security ("Commissioner"), affirming the Commissioner's final decision denying the appellant's claim. The District Court exercised jurisdiction under 42 U.S.C. § 405(g), and this Court has jurisdiction to hear Plummer's appeal pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we will remand to the Commissioner for further findings.

### I. Background

Plummer is a high school graduate with an Associate's degree in business, with past work experience as a word processor and as a file clerk. She was twenty-six years old at the time of filing. On January 13, 1993, Plummer, unrepresented by counsel, filed an application for social security disability benefits, contending she suffered from bilateral carpal tunnel syndrome, deQuervain's tenosynovitis, as well as other symptoms.

### A. Medical History

It is not necessary to review all of the evidence in the record pertaining to Plummer's medical impairments, as the Magistrate Judge's report and the ALJ's decision both summarize the pertinent medical history, which focuses on diagnoses of carpal tunnel syndrome and tendinitis.[1] *See,*

Eric J. Fischer (Argued), Elkins Park, Pennsylvania, for Appellant.

Joyce M.J. Gordon (Argued), Social Security Administration, SSA/OGC/Region III, Philadelphia, Pennsylvania, for Appellee.

---

* Hon. Murray M. Schwartz, Senior United States District Judge for the District of Delaware, sitting by designation.

1. The claimant was diagnosed with deQuervain's tendinitis of the left wrist in September, 1991. *Admin. R.* at 230. In December 1992,

she was diagnosed with bilateral carpal tunnel syndrome. *Id.* at 216. This diagnosis was contradicted by another orthopedic surgeon in December 1992 who saw no evidence of carpal tunnel syndrome. *Id.* at 185. Treating rheumatologist, Dr. Brent, diagnosed

*Plummer v. Chater,* No. 96–4586 (E.D.Pa. filed May 8, 1997) (Magistrate Judge's Report and Recommendation) (adopted by the District Court on July 22, 1998). However, neither the ALJ nor the Magistrate Judge described the evidence in the record pertaining to the claimant's alleged mental impairments. We do so now.

The first mention of potential psychiatric problems in the record is an evaluation on November 26, 1991 by a psychotherapist at the Counseling Program of the Pennsylvania Hospital. The report states, "[she] experiences heart palpitations, sweating, hand tremors, shakiness, has depressive bouts in which she feels lonely and removed." *Administrative Record* ("*Admin.R.*") at 128. The doctor diagnosed her with generalized anxiety disorder. *Id.* On December 18, 1991, she was diagnosed with depression, anxiety, and panic attacks by Philadelphia Health Services. *Id.* at 132. Plummer's treatment records from Philadelphia Health Services on March 19, 1992, reveal a diagnosis of anxiety/panic disorder. *Id.* at 152. There is a medical note in her file from May 11, 1992, which states Plummer "has a psychiatric anxiety disorder." *Id.* at 146. The file also notes the patient "refuses to see a therapist." *Id.*

The next reference in the record to the claimant's mental health is a July 13, 1994 Arthritis Center Progress Note. The note states Plummer is "depressed over employment situation." *Admin. R.* at 206. She was prescribed Pamelor, an anti-depressant medication. Dr. Brent, her treating physician, also prescribed the anti-depressant Nortriptyline. *Id.* at 251. There is one final reference to the claimant's mental state in the record. Upon filing for reconsideration of her denied claim for benefits, the claimant filed a mandated Reconsideration Disability Report, noting,

chronic tendinitis and bilateral carpal tunnel syndrome in February 1993. *Id.* at 191. In addition, there are numerous complaints of pain in the record. The claimant was prescribed medication and encouraged to use wrist splints.

"mentally, I am depressed and I don't know what the future holds for me. I am taking an anti-depressant." *Id.* at 71.

### B. Procedural Background

Plummer's initial application for disability benefits was denied on March 1, 1993. The hearing officer concluded Plummer was being treated for carpal tunnel syndrome, but that she had only mild limitation in motion which would not prevent her from working.

The unrepresented claimant requested reconsideration on April 9, 1993.[2] She filed the mandated Reconsideration Disability Report with her appeal. On this form, she stated her physical condition had deteriorated and she was suffering from depression. *Admin. R.* at 71. The Commissioner denied her reconsideration appeal on June 1, 1993, concluding that the claimant retained good strength and dexterity in her hands leaving her able to perform most normal activities. The Commissioner did not evaluate the claimant's alleged mental impairments in determining that Plummer could return to employment. *Id.* at 50.

Plummer then filed a request for a hearing before an administrative law judge ("ALJ") on June 10, 1993. A hearing took place on December 6, 1994, nearly eighteen months after the request was filed. According to the claimant's counsel, immediately before the hearing, the ALJ informed him she would not evaluate the claimant's psychiatric problems at the hearing. Further, the ALJ indicated to counsel that if he raised Plummer's alleged depression and anxiety, she would remand the case for a new reconsideration determination because it had not been previously evaluated. Given the already lengthy delay, and the financial difficulties associ-

2. Plummer retained counsel on April 23, 1993.

ated with further delay, Plummer chose to proceed with the hearing. This conversation is summarized in the transcript of the administrative hearing. The ALJ asked the claimant's counsel:

[B]efore we went on the record we discussed there are some allegations and some references in a few of the doctors [sic] reports that there's an anxiety problem here and I gave you the opportunity to have that evaluated and you declined, is that correct?

ATTY: Yes, I discussed it with my client, your honor, and she wanted to proceed. She said she couldn't afford the delay.

*Id.* at 280. On April 29, 1995, the ALJ denied Plummer's application for disability benefits. She concluded the claimant suffered from a "severe" impairment which precluded her from returning to her past relevant work, but that she retained the residual functional capacity to perform modified light work, and could perform jobs which existed in significant numbers in the local and national economy. The ALJ also made a specific finding that Plummer did not suffer from a "severe" mental impairment which affects her ability to perform work-related activities, even though (as noted above) she did not allow the claimant to present any evidence as to her mental state.

The Appeals Council of the Social Security Administration declined further review on May 7, 1996, making the ALJ's determination an appealable final decision. On December 4, 1996, Plummer filed an action pursuant to 42 U.S.C. § 405(g) in the United States District Court for the Eastern District of Pennsylvania seeking judicial review of her denial of disability benefits under Title II of the Social Security Act. The District Court referred the case to a Magistrate Judge to determine if the Commissioner's decision was supported by substantial evidence. Upon consideration of the parties' cross-motions for summary judgment, the Magistrate Judge recommended the Commissioner's motion

for summary judgment be granted. The District Court adopted the Magistrate Judge's report, and granted summary judgment for the Commissioner on July 22, 1998. Plummer now appeals the District Court's decision.

## II. Discussion

On appeal, Plummer contends the ALJ erred in discounting the treating rheumatologist's diagnosis of her condition, and in relying on an incomplete hypothetical in her examination of the vocational examination expert. Plummer also argues the ALJ treated the evidence of her mental impairments improperly.

■ Congress provides for judicial review of the Commissioner's decisions to deny a claimant's application for disability benefits. 42 U.S.C. § 405(g). The role of this Court is identical to that of the District Court, namely to determine whether there is substantial evidence to support the Commissioner's decision. *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir.1994). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir.1986). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In order to establish a disability under the Social Security Act, a claimant must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir.1988); 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated regulations incorporating a sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. § 404.1520; *Williams v. Sullivan*, 970 F.2d 1178, 1180 (3d Cir. 1992). In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

■ In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994). If the claimant is unable to resume her former occupation, the evaluation moves to

the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. *See, Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984).

The Commissioner has supplemented this sequential process for evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. These procedures require the hearing officer (and ALJ) to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record, in order to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If an impairment is found, the examiner must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. § 404.1520a(b)(2). The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work.[3] If the mental impairment is considered "severe", the examiner must then determine if it meets a listed mental disorder. § 404.1520a(c)(2). If the impairment is severe, but does not reach the level of a listed disorder, then the examiner must

---

**3.** § 404.1520a(b)(3) provides for the examination of the degree of functional loss in four areas of function considered essential to work. These areas of activities are: daily living; social functioning; concentration, persistence, or pace; and deterioration or de-

compensation in work or work-like settings. The degree of functional loss is rated on a scale that ranges from no limitation to so severe the claimant cannot perform these work-related functions. This information is then detailed on a PRT form.

conduct a residual functional capacity assessment. § 404.1520a(c)(3). At all adjudicative levels, a Psychiatric Review Treatment Form ("PRT form") must be completed. § 404.1520a(d). This form outlines the steps of the mental health evaluation in determining the degree of functional loss suffered by the claimant.

In this case, the ALJ concluded Plummer is not entitled to disability benefits, finding that: (1) Plummer has not performed any substantial gainful activity since the alleged onset date of disability; (2) Plummer's wrist impairments impose significant restrictions on work-related activities, and are considered "severe" impairments; (3) Plummer does not suffer from any impairments which would meet the severity criteria listed in the relevant regulation; (4) Plummer cannot perform her past work as a clerk/typist because it involves extensive bilateral finger and hand manipulation; and (5) Plummer nonetheless has the capacity to perform a number of jobs which exist in significant numbers in the national economy. The ALJ sought the assistance of a vocational expert in making this determination. In addition, the ALJ specifically found that the claimant's mental health problem was not "severe" and imposed no significant restrictions on her ability to perform work-related activities. She attached a PRT form explaining her finding.

### A. ALJ's Treatment of the Medical Evidence

▇ Plummer contends the ALJ's decision is not supported by substantial evidence and must be overturned, because the ALJ improperly substituted her own judgment in place of the medical evidence, particularly of her treating physician, Dr. Brent. Further, she argues the ALJ then erred in relying on the opinion of a vocational expert that there are jobs available which Plummer can perform, when the hypothetical used did not incorporate the entirety of the claimant's impairments.

▇ Because the claimant established she is unable to return to her past employment, the ALJ had the burden to show there is other employment the claimant is capable of performing. *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir.1985). In doing so, an ALJ may not make speculative inferences from medical reports. See, e.g., *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981). In addition, an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. *Ferguson*, 765 F.2d at 37 (1985). When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir.1983).

▇ Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.) An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985).

Plummer argues the ALJ improperly rejected the medical opinion of her treating physician Dr. Brent, as expressed in his answers to interrogatories. Dr. Brent agreed with a statement made by Plummer that she could go days at a time when she has great difficulty performing even

minor hand activities with either hand.[4] After the hearing, Dr. Brent answered supplemental interrogatories opining that Plummer would not be able to handle a job where she would be required to handle and/or finger on demand at any time when it might be required. When asked if Plummer will be able to return to some kind of work activity in the future, he replied, "I am hopeful but not confident." *Admin. R.* at 252. Plummer thus argues it is her doctor's medical opinion that she cannot perform any work at this time which requires any use of the hands on demand. She asserts she suffers from periodic "flare-ups" where she is unable to use her hands at all. Given this condition, Plummer contends she cannot perform even light work, as decided by the ALJ, because all of these jobs require the employee to handle and/or finger on demand.

The ALJ, in reviewing all of the medical evidence in the record, as well as the testimony at the hearing, concluded Plummer was capable of performing certain positions classified as "light work." She discounted Dr. Brent's interrogatory answers because they were inconsistent with the medical evidence. The ALJ states in her opinion:

> The medical evidence shows that the claimant has only had conservative treatment for her carpal tunnel syndrome/tendinitis. Her physicians have advised her to wear wrist splints and have prescribed pain medications. The claimant's treating physicians have precluded her from performing the type of clerical work she had been performing in the past, which ostensibly caused her impairment, but no physician has ever imposed any functional limitations which would preclude her from performing all types of work. I specifically note that I accorded Dr. Brent's interrogatory responses limited probative weight because these responses were

based primarily on the claimant's subjective complaints and included no narrative support for the predominately one-word answers presented. In his narrative reports, the only limitations Dr. Brent specified were associated with work such as typing and filing. Dr. Brent and all of the other physicians the claimant consulted only reported that the claimant cannot perform job duties requiring repetitive fine finger manipulation and/or handling.

*Admin. R.* at 28–29.

■ In fact, only one month before the answers to the initial interrogatories, Dr. Brent noted Plummer's hands and wrists had somewhat improved. *Id.* at 205. Dr. Brent did not mention the existence of complete "flare-ups" where the claimant is unable to use her hands at all. The ALJ was entitled to place greater reliance on the doctor's full medical opinion than his cursory answers to the interrogatories. *See, Williams v. Sullivan,* 970 F.2d 1178, 1187 (3d Cir.1992) (noting the Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts); *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir.1991) (holding an unsupported diagnosis is not entitled to significant weight); *Serody v. Chater,* 901 F.Supp. 925, 929 (E.D.Pa.1995) (holding an ALJ may reject treating physician's opinion on basis of contradictory medical evidence).

In addition, the ALJ reviewed several other treating physician's reports in reaching her decision. None of the doctors who evaluated the claimant found her unable to perform any work which required occasional use of her hands—rather, they reported the claimant cannot perform jobs which require repetitive fine finger manipulation and handling. For instance, Dr. Schneider, who examined Plummer for her

---

4. "Q: Ms. Plummer states that as a result of her above condition(s), that she may go days at a time when she has great difficulty performing even minor hand activities with

either hand, including buttons, turning doorknobs, etc. Is this credible? A: Yes." Interrogatories to Dr. Brent, 11–22–94, *Admin. R.* at 203.

private disability insurance carrier, reported in November 1992 that Plummer enjoyed normal sensation and range in motion in both hands and wrists, with no significant functional limitations. *Admin. R.* at 187–190. Similarly, Dr. Didzian, an orthopedic surgeon at the Penn Diagnostic Center, concluded in December 1992 there was no evidence of significant functional limitations. *Id.* at 182–186. Dr. Brent, the treating rheumatologist, reported in 1993 and 1994 that Plummer's wrist condition was improving. Dr. Brent never stated in his reports that Plummer was unable to perform any work activity other than her past position as a word processor/typist. The ALJ weighed the medical evidence, and concluded the claimant has the residual functional capacity to perform light work which does not require fine manual dexterity or handling. We find the ALJ's decision with regard to Plummer's physical limitations is supported by substantial evidence in the record.

■ The ALJ then employed a vocational expert in considering whether jobs existed which the claimant could perform given her "severe" impairments. Plummer argues the ALJ's reliance on the vocational expert was misplaced because the hypothetical asked did not include the medical evidence that the claimant cannot perform any jobs in which she must be able to use her hands on demand. Because the ALJ did not err in rejecting this argument as inconsistent with the objective medical evidence in the record as a whole, we conclude the hypothetical used was appropriate.

The ALJ solicited testimony from the vocational expert as to whether a person of Plummer's age, education, past work experience, who was capable of performing light work that did not require bilateral dexterity or extensive handling of objects, could perform work available in significant numbers in the national economy. In eliciting the testimony, the ALJ requested the vocational expert to assume a hypothetical individual who was capable of light work which involved standing, walking and/or the use of foot controls but could not perform work which required fine manual dexterity or extensive handling of objects with prolonged or repetitive use of the hands.

■ This hypothetical encompasses all the limitations which the ALJ found were suffered by the claimant. The vocational expert's testimony was in response to a hypothetical that fairly set forth every credible limitation established by the physical evidence. As such, it can be relied upon as substantial evidence supporting the ALJ's conclusion that Plummer is not totally disabled. *See Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987.) The vocational expert testified the claimant was capable of performing work activity as a restaurant hostess, a business escort, and a light security worker. He also testified these jobs exist in significant numbers in both the local and national economy. 20 C.F.R. § 404.1566(a). This satisfies the ALJ's burden of establishing there are jobs available which the claimant can perform given her "severe" disability.

The claimant argues she cannot perform the jobs which the vocational expert identified because there are periods during which she has "flare-ups" and cannot use her hands at all. The jobs listed all require intermittent or occasional use of the upper extremities on demand. As discussed *supra,* the ALJ's conclusion that the claimant can perform certain light level work is supported by substantial evidence in the record.[5] There is no indication in the medical record, except for the terse interrogatory responses by Dr. Brent, that Plummer experiences extended periods of time where she cannot use her hands or

---

5. Light level work is defined at 20 C.F.R. 404.1567(b): "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The ALJ concluded Plummer could perform light work, although limited to those positions which do not require bilateral dexterity or extensive handling of objects.

wrists to lift even negligible weight. The light level work called for does not entail any more lifting than is required in daily living.[6] Therefore, we conclude the ALJ's use of the hypothetical in determining the claimant is not totally disabled was not erroneous, and is supported by substantial evidence in the record.

### B. ALJ's Treatment of the Claimant's Mental Impairments

██ The most troublesome aspect of this case is the ALJ's treatment of the evidence relating to Plummer's mental impairments. As noted *supra*, there is substantial evidence in the record that the claimant suffers from both depression and anxiety. In addition, Plummer directly raised a psychiatric issue below in her comments on the Reconsideration Disability Report, which was not considered by the hearing officer on reconsideration. *Admin. R.* at 50.

Prior to the hearing, the ALJ offered Plummer's counsel an onerous choice: remand the case for a "new" reconsideration decision incorporating the psychiatric issues or proceed with no testimony concerning the claimant's mental health. This choice was particularly troublesome because it took eighteen months from the time of her appeal for Plummer to receive a hearing before an ALJ.[7] Faced with the daunting prospect of another lengthy delay, Plummer chose to proceed without raising any psychiatric claims. As a consequence, there was no testimony during the hearing concerning Plummer's mental impairments, nor did the ALJ order a psychological examination. Nonetheless, in her written decision, the ALJ made explicit conclusions, and worse, a finding, regarding Plummer's mental health. The ALJ wrote:

> With regard to her mental health status, there is no evidence of record that the claimant has any thought disorder or significant deficit of memory or concentration or that she has any difficulties in routine interactions with other people. There is no evidence that she has ever been treated ... on a regular basis by a psychologist or psychiatrist. Therefore, I specifically find that the claimant's mental health problem is 'not severe' and imposes no significant restrictions on her ability to perform work-related activities.

In addition, the ALJ attached a PRT form in which she concluded the claimant suffered from mild affective and anxiety related disorders, which only caused slight restrictions on her daily activities, and thus had no effect on her residual functional capacity.

The ALJ's decision, the claimant argues, unfairly prejudiced her claim because the judge made explicit findings without giving the claimant an opportunity to fully testify, develop, and explore her mental impairments. We agree. We conclude the ALJ did not give proper consideration to the claimant's alleged mental impairments as is required by law. The ALJ cannot ignore evidence of a mental impairment in the record, nor can she effectively force a claimant to waive her rights to have the evidence considered in her disability determination.

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a. *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir.1993). These procedures are intended to ensure a claimant's mental health impairments are given serious consideration by the Commissioner in determining whether a claimant is disabled.

---

**6.** In this regard, the ALJ took notice that the claimant drives her child to day-care everyday, which requires the use of her hands and wrists "on demand" as well.

**7.** The initial request for a hearing was filed on June 10, 1993. The actual hearing was scheduled for December 6, 1994.

Faced with evidence of a mental impairment in the record, which was not considered below, the ALJ may remand for further consideration, or proceed with a hearing considering the mental health evidence. The ALJ must give all the evidence in the record the serious consideration required by law. 42 U.S.C. § 423(d)(5)(B) (Commissioner must consider all evidence available in an individual's case record in making a disability determination); 42 U.S.C. § 421(h).

▪▪▪ The statute concerning the evaluation of mental impairments provides, "an initial determination under subsection (a), (c), (g) or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h). Thus, "when the record contains evidence of a mental impairment, the Secretary [now Commissioner] cannot determine that the claimant is not under a disability without first making every reasonable effort to ensure that a qualified psychiatrist ... has completed the medical portion of the case review and any applicable residual functional capacity assessment." *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir.1993).

Because 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment. Instead, the Commissioner's regulations provide an ALJ with greater flexibility than other hearing officers. At the initial and reconsideration levels, a PRT form—outlining the steps of the § 404.1520a procedure—must be completed and signed by a medical consultant. 20 C.F.R. § 404.1520a(d)(1). However, the ALJ has several options available: she can complete and sign the document without the assistance of a medical adviser; she can call a medical adviser for assistance in completing the document; or, if new evidence is received or the issue of mental impairments arises for the first time, she can remand the case for completion of the document and a new determination. 20 C.F.R. § 404.1520a(d)(1)(i-iii). In summary, the regulations allow the ALJ to remand for further review, to proceed with a determination without the assistance of a medical adviser, or to call a medical adviser for assistance with the case. In all cases, however, the ALJ has a duty to consider all evidence of impairments in the record.

Clearly, the ALJ did not fulfill her duty to explore the claimant's alleged mental impairment.[8] The ALJ, as contemplated by the regulations, completed the mental impairment review, including the residual functional capacity assessment, by herself without the assistance of a medical consultant. § 404.1520a(d)(1)(i). The regulations explicitly require, however, that "the evidence must be carefully reviewed and conclusions supported by it." § 404.1520a(b). There is no indication the ALJ did so, and her determination of the claimant's mental impairments is not supported by substantial evidence in the record. In addition, the ALJ did not solicit Plummer's testimony at the hearing as to how her anxiety

---

8. We note, however, that there is sufficient evidence in the record, including the claimant's statement on the Reconsideration Disability Report that she is "depressed" and on medication, that her mental impairments should have been evaluated before reaching the ALJ hearing level. 20 C.F.R. § 404.1520a (requiring the Commissioner to record all

pertinent signs, symptoms, findings and functional limitations in order to determine if a mental impairment exists); 20 C.F.R. § 404.900(b) (noting the Commissioner considers at each step of the review process all information presented by the claimant as well as all other information in the record).

and depression affected her activities of "daily living", "social functioning", "concentration, persistence or pace", or caused "deterioration or decompensation in work or work-like settings." 20 C.F.R. § 404.1520a(b)(3). These are the criteria which are measured in order to ascertain the degree of functional loss by the claimant's impairments. In fact, the ALJ barred the claimant from raising her mental disabilities altogether, but then inexplicably concluded the claimant's depression and anxiety only had a minimal effect on these very criteria.

The record contains numerous references to the claimant's depression and anxiety. To review, the evidence in this instance includes several diagnoses of depression and generalized anxiety disorder. On November 26, 1991, she was diagnosed with generalized anxiety disorder. It was reported that she "experiences heart palpitations, sweating, hand tremors, shakiness, has depressive bouts in which she feels lonely and removed." On December 18, 1991, she was diagnosed with depression, anxiety and panic attacks. On March 19, 1992, she was diagnosed with anxiety/panic disorder. On May 11, 1992, it was noted in her medical file that she "has a psychiatric anxiety disorder." Finally, on July 13, 1994, she was prescribed Pamelor and Nortriptyline, both anti-depressants.

▇ Given the evidence in the record, we cannot conclude substantial evidence supports the ALJ's decision regarding the extent of the claimant's mental impairment. While the mere presence of a mental disturbance does not automatically indicate a severe disability, it cannot be ignored by the ALJ. *Bernal v. Bowen*,

851 F.2d 297, 301 (10th Cir.1988). It is noteworthy that none of the doctors who diagnosed Plummer with mental impairments evaluated its effects on her ability to work. The ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work. *See, e.g., Stambaugh on Behalf of Stambaugh v. Sullivan*, 929 F.2d 292, 295 (7th Cir.1991); *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir.1991) (requiring psychiatric analysis because of a psychiatrist's diagnosis of "[c]hronic fatigue and lack of energy; this possibly could be more likely to be chronic mental depression in this patient" in the record). In fact, one of the essential purposes of § 404.1520a is to determine "whether or not a mental impairment(s) exists". § 404.1520a(b)(1).

▇ The ALJ was obligated to investigate the claimant's mental impairments. This could have been accomplished either by remanding the case for further development, by seeking medical assistance, or perhaps by soliciting testimony directly from the claimant. This obligation is heightened when the Commissioner fails, as he did here, to satisfy his obligation under 42 U.S.C. § 421(h) and 20 C.F.R. § 404.1520a to have a qualified psychiatrist or psychologist evaluate Plummer's claim during the initial or reconsideration stage. Thus, it was particularly unjust for the ALJ to prohibit Plummer from developing her mental impairment claim and then to issue a factual finding that could preclude Plummer from raising the issue in a subsequent application.[9] Under these circumstances, additional development of

---

9. We have no jurisdiction to review the Commissioner's application of res judicata unless the decision is accompanied by a hearing. *See Califano v. Sanders*, 430 U.S. 99, 107–08, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Because an ALJ is authorized to dismiss entirely or in part a hearing request if he or she decides that the Social Security Administration reached a final decision on one or more of the issues raised by the applicant, *see* 20 C.F.R. § 404.957 (1998), a federal court

might not have jurisdiction to review the Commissioner's denial of the applicant's claim on res judicata grounds. *See, e.g., Davis v. Schweiker*, 665 F.2d 934, 936 (9th Cir.1982) (holding that Secretary's dismissal of subsequent application on the ground of res judicata is not reviewable); *Bagby v. Harris*, 650 F.2d 836, 838 (6th Cir.1981) (same); *Rios v. Secretary of Health, Educ. & Welfare*, 614 F.2d 25, 26–27 (1st Cir.1980) (same).

the psychiatric issue is warranted, and the claimant's disability claim will be remanded for further proceedings in accordance with the procedures outlined in 20 C.F.R. § 404.983. The ALJ's Psychiatric Review Technique Form will be disregarded.

This Court has noted in the past our frustration with the delays in disability determinations by the Social Security Administration. *See, e.g., Woody v. Secretary of Health and Human Services,* 859 F.2d 1156 (3d Cir.1988) (directing disability benefits be paid after eight years of administrative and judicial proceedings). Evelyn Plummer first applied for disability benefits more than six years ago. She suffered through eighteen months of delay before receiving a hearing before an ALJ. Given the inexcusable passage of time, the Commissioner shall consider and evaluate with all due speed updated evidence of Plummer's physical and mental disabilities. 42 U.S.C. § 405(g); 20 C.F.R. § 404.983. In addition, the Commissioner shall consider the combined effect of all of Plummer's impairments, physical and mental, in determining whether the claimant is entitled to disability benefits. 42 U.S.C. § 423(d)(2)(B).

## III. Conclusion

For the foregoing reasons, this Court will reverse the District Court's grant of summary judgment and remand to the Commissioner of Social Security for further action consistent with this opinion.