

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2002

# Cherry v. Comm Social Security

Precedential or Non-Precedential:

Docket 1-3181

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Cherry v. Comm Social Security" (2002). *2002 Decisions.* Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 01-3181


KIM CHERRY,
                    Appellant

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY*

*Substituted pursuant to Fed. R. App. P. 43(c)(2)


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 01-cv-00279)
District Judge:  Hon. Gary L. Lancaster


Submitted Under Third Circuit LAR 34.1(a)
February 7, 2002

Before:  SLOVITER, AMBRO, Circuit Judges, and SHADUR, District Judge

(Filed: March 12, 2002)


OPINION OF THE COURT

SLOVITER, Circuit Judge.

Kim Cherry filed a claim for Disability Insurance Benefits with the Social Security Administration on June 3, 1998. After her application was denied administratively, she sought a hearing. The Administrative Law Judge ("ALJ") determined that Cherry was not disabled by finding that Cherry could perform the exertional and non-exertional requirements of certain sedentary jobs, which exist in significant numbers in the economy. The Appeals Council denied Cherry's request for review, rendering the ALJ's decision final.

Cherry then filed suit in the United States District Court for the Western District of Pennsylvania which granted summary judgment in favor of the Commissioner of Social Security. Cherry appeals. We will affirm.

## I.

Because we write solely for the parties, we need not set forth a detailed recitation of the background for this appeal and will limit our discussion to resolution of the issues presented.

Cherry, born on May 1, 1958, is considered a younger individual under the regulations. 20 C.F.R. 416.963(c) (2001). She graduated from high school and attended one year of college. She worked as a temporary passport clerk for a few weeks, and then as a temporary proofreader for a few weeks in 1998 and 1999 respectively.

Cherry has admitted herself for psychiatric treatment several times. She has been treated on various occasions for depression and alcohol and drug abuse. She has been diagnosed with obsessive/compulsive disorder. Cherry has tried to commit suicide, and in at least one report has linked her current depression to childhood sexual abuse. She has also linked her depression to the stress of single-motherhood. She has, however, responded well to treatment, and upon various discharges has received GAF assessments of 70, 65, and 55. GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") 34 (American Psychiatric Assoc. 2000). GAF scores in the 51-60 range indicate moderate impairment in social or

occupational functioning.  Id.  Cherry has responded positively to therapy, as well as medication, particularly when she abstains from drug use.

In January 1997, Dr. Ismal performed a psychiatric evaluation at the request of the Commissioner.  After some mental testing, Dr. Ismal diagnosed major depression recurrent and rated Cherry's GAF at 65.  In February 1997, Douglas Schiller, Ph.D., a state agency psychologist, reviewed the evidence of record and found Cherry was "not significantly limited" in the majority of mental areas related to work, and "moderately limited" in some areas, such as maintaining concentration for extended periods of time, accepting criticism, and setting goals.  In November 1998, Stephen Pacella, Ph.D., a psychologist, evaluated Cherry and observed that she was non-psychotic and that her thinking was clear and coherent.  Considering Cherry's history of depression and drug use, Dr. Pacella doubted her ability to attend to tasks and work at a consistent pace.  However, Dr. Pacella also noted some inconsistencies between what Cherry told him and what her past medical records reported.  He observed that she seemed "overly-concerned that [he] accept the gravity and authenticity of her complaints," and that she made a "poor effort" on the mental status exam.  App. at 239-40.  In December 1998, a state agency psychologist reviewed the record evidence, including Dr. Pacella's report, and concluded that Cherry had no significant limitation to moderate limitation of psychological functioning, and that she was not precluded from performing substantial gainful work by her depressive disorder or substance abuse.

Cherry has also had persistent back problems.  She has been treated for disc herniation, and was recovering from that surgery (a discectomy) in 1999.  However, she states that she still experiences constant pain.  Cherry testified that up to twice a day she performs exercises for 15 minutes at a time for her back problems.  In September 1996, Dr. Antin, a treating physician, estimated that Cherry could stand or walk between 2 to 6 hours in an 8 hour day, and sit for 6 or more hours in an 8 hour day.  Dr. Antin found no impairment in Cherry's ability to push or pull, no environmental limitations, and found that Cherry could occasionally make various postural changes.

On May 19, 1999, shortly after Cherry's discectomy, Dr. Eric Minde diagnosed her with "low back derangement" and radiculopathy. He opined Cherry could not be gainfully employed and did not anticipate a change in her prognosis for several months. Dr. Ike, Cherry's treating physician, assessed her progress for recovery around the same time as "good." Further, Dr. Ike completed a physical assessment that Cherry could lift and carry 10 pounds, and stand and walk for one to two hours. Dr. Ike did not limit Cherry's ability to sit or push and pull.

A vocational expert viewed all the evidence of record and was present for Cherry's testimony. The ALJ asked the vocational expert to consider Cherry's age, education and work history, and to assume that Cherry was limited to sedentary work without balancing, stooping, kneeling, crouching, or climbing. Based upon this hypothetical, the expert opined that the worker would be able to perform the sedentary occupations of assembler, records clerk, and stock and inventory clerk, which exist in significant numbers in the economy.

## II.

This court reviews the ALJ's findings of fact and affirms the Commissioner's decision if the factual findings are substantially supported by evidence in the record. See 42 U.S.C. 405(g) (2001); Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation and quotation omitted); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The ALJ found that there are a broad range of sedentary positions which Cherry can perform. These findings are substantially supported by the evidence presented.

The ultimate conclusion of disability is reserved for the Commissioner. 20 C.F.R. 404.1527(e)(1). The Regulations provide a five-step analysis process to be followed when reviewing the question of whether a claimant is disabled. 20 C.F.R. 404.1520; Welch v. Heckler, 808 F.2d 264, 268-69 (3d Cir. 1986). At step three, the ALJ found that Cherry does not have an impairment or combination of impairments that satisfies any of the listed impairments in the Listing of Impairments, Appendix 1. At step four, the ALJ

found that Cherry would be able to meet the exertional and mental demands of the sedentary jobs of assembler, 156,000 jobs nationwide, records clerk, 36,000 jobs nationwide, and stock and inventory clerk, 31,000 jobs nationwide. The ALJ concluded that based on these findings, Cherry is not disabled within the meaning of the Social Security Act.

A. Step three

The evidence substantially supports the ALJ's finding that Cherry does not have an impairment or combination of impairments that satisfies the listed impairments in the Listing of Impairments, Appendix 1. Cherry presented no clinical proof that she has a musculoskeletal or psychiatric impairment satisfying the criteria of any section within Listing Sections 1.00 or 12.00. Therefore, the record substantially supports the ALJ's findings on this point.

B. Step four

The evidence substantially supports the ALJ's finding that Cherry is able to perform certain sedentary jobs. The ALJ considered the reports of both examining and non-examining physicians, and relied upon the opinion of Dr. Ike (a treating physician) that Cherry is capable of sedentary work. Although Dr. Pacella, a psychologist who saw Cherry only once, had concerns about Cherry's ability to function in competitive employment, Dr. Pacella also noted that Cherry made "little effort to maintain concentration and attention," and seemed "overly concerned that [he] accept the gravity and authenticity of her complaints." Based on Dr. Pacella's observations, and the ALJ's own observations of Cherry on the witness stand, the ALJ properly relied on the record as a whole in reaching the conclusion that Cherry is able to perform certain sedentary jobs.

The remainder of the evidence supported the ALJ's finding on this point because it presented the following information and opinions: (1) Cherry could maintain a daily routine and perform tasks like shopping, cooking, cleaning, taking the bus and maintaining her hygiene; (2) though experiencing chronic pain, Cherry could lift and carry 10 pounds, could sit for extended periods of time, could stand or walk for 2 hours at a time, and could push and pull; (3) Cherry was functional, despite her depression, and

responded well to therapy; (4) when Cherry remained drug-free she responded well to therapy; and, (5) Cherry had access to antidepressant medication.  This is evidence that, in the language of Perales, a "reasonable mind might accept as adequate to support [the ALJ's] conclusion."  402 U.S. at 401.

                                III.

    For the reasons set forth above, we will affirm the judgment of the District Court.


TO THE CLERK:

        Please file the foregoing opinion.



                    /s/ Dolores K. Sloviter
                    Circuit Judge