

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-2005

# Dula v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Dula v. Comm Social Security" (2005). *2005 Decisions.* Paper 1254.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1254

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――

No. 04-3176

―――――

ALETA A. DULA,

<u>Appellant</u>

v.

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

―――――

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-1179)
District Judge: Honorable Joy Flowers Conti

―――――

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2005

Before: MCKEE, VAN ANTWERPEN, and WEIS, <u>Circuit Judges</u>.

(Filed   May 3, 2005   )

―――――

OPINION OF THE COURT

―――――

VAN ANTWERPEN, <u>Circuit Judge</u>.

 Appellant Aleta A. Dula ("Dula") appeals from an order of the District Court granting

summary judgment for the Commissioner of Social Security ("Commissioner") in this action

1

to review a final determination of the Commissioner that denied Dula's applications for social security disability ("DIB") and supplemental security income ("SSI") benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the Commissioner's ruling is supported by substantial evidence, we will affirm.

I.

At the time of the Commissioner's final decision, Dula was a 48-year-old individual with a college education. Her work experience included employment as a customer service representative, a document coder, a team leader and a clerical worker. She alleges that she has been disabled since November 1, 1997, because of bipolar disorder, left ankle arthritis and hypertension.

Dula introduced into evidence records from a number of medical sources. They may be summarized as follows. On January 19, 1999, Dula's treating physician, Dr. Rollman, reported that while Dula had a history of bipolar disorder and controlled hypertension, she was functioning well and that her problems were stable. On July 22, 2002, Dr. Rollman reported that Dula was "doing fine" psychiatrically.

On August 13, 2001, Dula met with Dr. Strick, a consultive psychologist, who reported that Dula's bipolar disorder was in remission. Dr. Strick also opined that if Dula made successful use of psychotherapy, she could tolerate a low stress job.

On September 19, 2001, Dr. Zuckerman, a state agency psychological consultant, completed a "checkbox" Psychiatric Review Technique form and concluded from it that Dula

had mild limitations in completing activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace. Dr. Zuckerman also disagreed with Dr. Strick's evaluation and opinion, *supra*, on the grounds that they were internally inconsistent and not supported by the record as a whole.

On November 6, 2001, Dr. Levine, another consultative physician, observed Dula. He found that Dula's symptoms could, as a general matter, limit her ability to work. However, Dr. Levine also found that Dula was not exhibiting any symptoms as of the date he observed her. From this he concluded that Dula's diagnosis was not presently limiting her ability to work. In addition, Dr. Levine did not observe physical, exertional, standing or walking limitations.

On February 28, 2002, Dr. Wolfson, a licensed psychologist, completed a Mental Status Questionnaire regarding Dula. While he diagnosed Dula with bipolar disorder, he also observed that she had responded to therapy and was only mildly depressed. He concluded that Dula could work, but could not work an eight hour day on the grounds that work-related stress could trigger manic episodes. On October 22, 2002, Dr. Wolfson reported that Dula had been "taken off" her regular medication, her depressive symptoms had been exacerbated as a result, and that Dula remained incapable of working a full eight-hour workday.

Finally, on June 7, 2002, Dr. Miller, one of Dula's treating physicians, completed a similar Mental Health Status Questionnaire regarding Dula. Dr. Miller confirmed the diagnosis of bipolar disorder. Although he noted that her condition was improving, he also

3

opined that Dula could not work eight hour days.

## II.

Dula applied for DIB and SSI on June 12, 2001. The state agency denied Dula's claims, Dula appealed, and after a hearing on December 5, 2002, Dula's appeal was rejected by an administrative law judge ("ALJ"). The ALJ reasoned that Dula was not disabled within the meaning of the applicable statutory provisions and regulations because her impairments had not precluded her from performing her past work as a document coder and clerical worker.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Dula's request for review.

Dula then appealed the Commissioner's final decision in the United States District Court for the Western District of Pennsylvania. On July 13, 2004, the District Court issued an order granting summary judgment to the Commissioner, concluding that the ALJ's determination was supported by substantial evidence.

## III.

Our review of the Commissioner's final decision denying Dula DIB and SSI is not plenary. We are bound by the Commissioner's findings of fact if they are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence" is defined as "more than a mere scintilla. It

---

[1] The applicable Regulations state in pertinent part that "[i]f you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

4

means such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427 (citations omitted).

IV.

Dula challenges the relative weight that the ALJ assigned to the various medical opinions she introduced into the record, summarized *supra*, arguing that the ALJ should have given controlling weight to the opinion of her treating physician, Dr. Miller.

Our review of the record shows that the ALJ properly considered all of the medical evidence introduced by Dula and made a reasoned decision about the relative weight to assign each report. The ALJ thus met his "duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). The record before us plainly shows that the ALJ considered the opinions of Drs. Zuckerman, Levine, Wolfson, Miller, Rollman and Strick. The record also shows that the ALJ did not misapprehend the opinions of these doctors. Drs. Miller and Wolfson concluded that Dula would not be able to work. Dr. Zuckerman concluded that Dula could work.[2] Dr. Rollman

---

[2] It is true that Dr. Zuckerman's report "require[d] the physician only to check boxes and briefly fill in blanks." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Accordingly, Dr. Zuckerman's report is a weaker and less reliable form of evidence than a more thorough report. *Id.* Nonetheless, the Regulations show that ALJs are expected to consider such reports. *See* 20 C.F.R. §§ 404.1513(c), 416.913(c) (stating "[a]t the administrative law judge and Appeals Council levels, we will consider residual functional capacity assessments made by State agency medical and psychological consultants and other program physicians and psychologists . . . ."). Thus, it was appropriate for the ALJ in this case to consider Dr. Zuckerman's report and to note that it was consistent with

did not offer an opinion on the subject, but made the general finding that Dula was not experiencing severe psychiatric impairments. Dr. Strick found that Dula's bipolar disorder was in remission, and that under favorable circumstances she would be able to work a low stress job. Finally, Dr. Levine found that while Dula's mental conditions could interfere with working, Dula's mental attitude at the time of her examination was good.

These multiple sources offered conflicting opinions regarding Dula's condition and its impact on her ability to work. "When the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter*, 642 F.2d at 705. In concluding that Dula was not disabled, the ALJ accorded the opinions of Drs. Miller and Wolfson relatively less weight,[3] and accorded the opinions of Drs. Zuckerman and Levine more weight. This was supported by substantial evidence in the record. While Dula is correct that opinions from treating physicians regarding the nature and severity of an impairment are accorded significant presumptive weight, those opinions are not automatically entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ retains the duty to analyze treating source opinions and judge whether they are

other medical evidence in the record. This report also contains more information than the standard checkbox form, since Dr. Zuckerman explained what data he used to reach his conclusions.

[3] It is worth emphasizing that a treating source's opinion about a claimant's ability to work is not entitled to special deference; the disability determination is the province of the ALJ alone. 20 C.F.R. §§ 404.1527(e), 416.927(e). Rather, treating source's opinions are particularly useful in discussing the "nature and severity" of the impairments. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

supported by and consistent with the rest of the record. "Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer*, 186 F.3d at 429). The ALJ made no such error here. Moreover, the Regulations themselves clearly describe the ALJ's duties in evaluating treating source opinions:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *If* we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is *well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (emphasis added).

Thus, in discounting the opinions of Drs. Miller and Wolfson, the ALJ did not "reject evidence for no reason or for the wrong reason." Instead, he found that their opinions were not supported by clinical evidence and were inconsistent with the other evidence from the record. Specifically, the ALJ found that Dr. Miller's treatment notes, which indicated that Dula's bipolar disorder was in remission, were inconsistent with Dr. Miller's final opinion that Dula was unable to work; that the record lacked any treatment notes from Dr. Wolfson

7

to support his conclusion regarding Dula's ability to work; and that the opinions of both of these Doctors were inconsistent with the record as a whole.

In sum, the ALJ properly discharged his duties in evaluating and weighing the various medical reports offered by Dula, and made findings supported by substantial evidence. We have considered all of the other arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be affirmed.