

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2008

# Palmer v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2351

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Palmer v. Comm Social Security" (2008). *2008 Decisions.* Paper 882.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/882

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2351
_____

TAMMY M. PALMER,

Appellant

v.

*MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY


*(Pursuant to Rule 43(c), F.R.A.P.)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-01385)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2008

Before:  AMBRO, FISHER and MICHEL,* *Circuit Judges*.

(Filed: July 8, 2008)
_____

OPINION OF THE COURT
_____

_____

*The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals
for the Federal Circuit, sitting by designation.

FISHER, *Circuit Judge*.

Tammy Palmer asserts that the Commissioner of Social Security erred in awarding her social security disability insurance benefits for a closed period, rather than on an ongoing basis. The District Court granted summary judgment in favor of the Commissioner, affirming the Commissioner's final decision to award benefits for a closed period. We will affirm the District Court.

I.

Palmer was born in January 1965. She has a high-school education, and in her previous job she worked on a production line, assembling medical products under a microscope. Palmer contends she began suffering from stiffness and soreness in November 1992. In October 1995, Palmer's blood work showed elevated rheumatoid factors, thus favoring a diagnosis of rheumatoid arthritis. Palmer began seeing Dr. Paul Killian at Arthritis and Rheumatic Disease Associates, who prescribed prednisone and Plaquenil to control her arthritis.

In January 2001, Palmer's arthritis flared as a result of her recent gallbladder removal and then subsided. Within a few months thereafter, Dr. Killian added Celebrex, methotrexate, and folic acid to Palmer's medication regimen. During that time, Dr. Killian noted that Palmer's condition was "much improved." At a visit in August 2001, Dr. Killian noted that her rheumatoid arthritis was "finally coming under excellent

2

control." Palmer was working full-time at this point. A few months later, in November 2001, she was laid off due to company downsizing.

Between 2001 and 2004, Palmer continued under the care of her rheumatologist. Her medical records show that despite occasional flare-ups of arthritis and "bad prognostic factors," she continued to respond well to medications. Dr. Killian told her that disability insurance benefits would be appropriate for her, because her rheumatoid arthritis was a chronic condition that would probably require lifelong medications.

Palmer switched doctors because of a change in her insurance. Her new rheumatologist, Dr. Elliott Goldberg, wrote to Palmer's primary care physician in March 2004 that she was stable on medications and that her rheumatoid arthritis was "nearly in complete remission." Writing again on July 29, 2004, Dr. Goldberg stated: "She has been completely stable without any symptoms whatsoever . . . . My impression is that her disease is in remission . . . . She is much better since she has stopped her work."

Palmer applied for disability insurance benefits in December 2001. The Pennsylvania Bureau of Disability Determination, acting on behalf of the Commissioner of Social Security, denied her claim in March 2002. Palmer requested a hearing before an administrative law judge ("ALJ"). At the hearing in November 2002, Palmer testified that she could perform a variety of activities of daily living, including: doing household chores at her own pace, shopping, exercising on a bicycle or walking, and manipulating objects while cooking. She stated that she could usually perform fine motor tasks such as

3

tying shoes and fastening buttons.  She denied having difficulty sitting and said she could lift and carry a gallon of milk.

In December 2002, the ALJ determined that Palmer was not disabled.  Palmer requested review by the Social Security Administration Appeals Council.  The Appeals Council denied the request for review in September 2003.

Palmer appealed to the United States District Court for the Western District of Pennsylvania.  The Court vacated the decision in May 2004 and remanded the case, determining that the ALJ improperly failed to consider medical evidence and to develop the factual record.

After a second hearing, the ALJ issued a decision in November 2004 granting benefits for a closed period.  The ALJ determined that Palmer was disabled from November 9, 2001 (her alleged date of onset) until July 29, 2004 (the date Dr. Goldberg wrote that she was "completely stable without any symptoms whatsoever").

Palmer filed exceptions, arguing that benefits should be awarded on an ongoing basis.  In August 2006, the Appeals Council denied Palmer's request for review.  Palmer appealed to the District Court, which affirmed the ALJ's decision.  Palmer now appeals to this Court.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  When a social security claimant appeals the decision of the Commissioner, our role "is identical to that of the

4

District Court, namely to determine whether there is substantial evidence to support the Commissioner's decision." 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate. *Id.*

III.

Palmer argues that the ALJ failed to consider all of the relevant medical evidence. We disagree. The ALJ's decision was supported by substantial evidence, and the District Court did not err when it affirmed the ALJ's decision.

We have explained the nature of the inquiry in Social Security disability cases:

> In order to establish a disability under the Social Security Act, a claimant must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir.1988); 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

*Id.* at 427-428. The ALJ must determine whether there has been any medical improvement related to a claimant's ability to work, and if the improvement would cease if the claimant were to go back to work. 20 C.F.R. § 404.1594(c)(3)(iv).

Here, the ALJ made his determination based on Palmer's treatment notes and her testimony about her daily physical activity. The ALJ found that she could not continue to perform her former job manipulating tiny objects under a microscope on a production

5

line.  He concluded, however, that her condition had subsided such that she was capable of doing sedentary work that did not require her to engage in gross or fine manipulation more than occasionally.  The ALJ endorsed the Vocational Expert's recommendations for available jobs, including building receptionist, cashier, hand packer, and gate person.

Palmer contends that the ALJ erred when giving weight to the written statements by Dr. Goldberg.  She claims that starting to work again would only cause her condition to destabilize.  She points to the last sentence of Dr. Goldberg's July 29, 2004 letter, which says:  "[Palmer] is much better since she has stopped her work."

There is substantial evidence to support the ALJ's disagreement with Palmer's interpretation of Dr. Goldberg's letter.  The letter does not clearly state that there was a causal link between Palmer's stability on her medications and the fact that she was not working.  Palmer's former doctor, Dr. Killian, observed that she responded positively to medications even while she was still working.  The evidence on record shows continuing improvement in her rheumatoid arthritis between 2001 and 2004 and an ability to function in her activities of daily living.  Palmer testified at her hearing that she was able to perform a wide variety of physical activities, even though some activities had to be performed at a pace that accommodated her arthritis.  Therefore, we conclude that substantial evidence supports the determination that Palmer can "engage in . . . substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

6

Palmer believes that the decision of the ALJ conflicts with 20 C.F.R. § 404.1594(c)(iv), which states that temporary remissions are not a sufficient basis upon which to base a medical improvement. We conclude that the rulings of the ALJ and District Court do not conflict with the regulation. Dr. Killian's notes state that disability insurance benefits would be appropriate for Palmer; on more than one occasion, he recommended that she apply (or re-apply). However, Dr. Goldberg's July 29, 2004 letter indicates that Palmer was stable on her medications and that her rheumatoid arthritis was in complete remission.

"When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citation omitted). Here, the ALJ did not reject Dr. Killian's conclusions "for no reason or for the wrong reason." Instead, he reviewed all the medical evidence and determined that Palmer's medical condition had improved sufficiently to allow her to participate in substantial gainful activity. Moreover, he took Palmer's rheumatoid arthritis into account, listing sedentary jobs that Palmer could perform without aggravating her condition. We conclude that substantial evidence supported the ALJ's determination that Palmer was eligible for benefits during a closed period and not on an ongoing basis.

IV.

For the reasons set forth above, we will affirm the judgment of the District Court.