

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2003

# Johnson v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket 02-2123

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Johnson v. Comm Social Security" (2003). *2003 Decisions.* Paper 847.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/847

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2123

LUCY JOHNSON

v.

*JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION

*(Pursuant to F.R.A.P. 43(c))

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 01-cv-03631)
District Court Judge: Honorable Charles R. Weiner

Argued December 17, 2002

Before: SLOVITER, RENDELL and GREENBERG, Circuit Judges.

(Filed                    )

Michael P. Boyle, Esq.    [ARGUED]
123 South Broad Street, Suite 2140
Philadelphia, PA  19109
   *Counsel for Appellant*

Robert W. Kosman, Esq.    [ARGUED]
Margaret Mary Maguire, Esq.
Social Security Administration
OGC/Region III

P.O. Box 41777

Philadelphia, PA 19101

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

This case involves a claim for social security disability benefits ("disability benefits") under Title II of the Social Security Act. Lucy Johnson, the Appellant, petitioned the District Court to overturn the denial of her application for disability benefits. Upon consideration of cross-motions for summary judgment, the District Court granted the motion of the Commissioner of the Social Security Administration ("Commissioner"). Johnson now appeals. The District Court had jurisdiction under 42 U.S.C. 405(g) (2002). We have jurisdiction under 28 U.S.C. § 1291 (2002). We will affirm in part, reverse in part, and remand to the District Court with instructions to return the case to the Commissioner for further proceedings in accordance with this opinion.

Johnson has alleged that the Commissioner committed a number of errors in rejecting her application. In reviewing a determination adopted by the Commissioner, we keep in mind that, although our review of the District Court's order granting summary judgment and its interpretation of legal issues is plenary, <u>Podedworny v. Harris</u>, 745 F.2d 210, 217 (3d Cir. 1984), we must uphold the Commissioner's findings unless we conclude that they were not supported by "substantial evidence." <u>Id.</u>; 42 U.S.C. § 405(g). Because the Commissioner adopted the decision of the Administrative Law Judge (ALJ), we review

2

the substance of that decision for substantial evidence. In essence, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The Social Security Administration applies a five-step sequential evaluation to determine if an applicant qualifies for disability benefits. See, e.g., Burns v. Barnhart, __ F.3d __, No. 02-1091, 2002 WL 31716291 (3d Cir. Dec. 4, 2002); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); Williams v. Sullivan, 970 F.2d 1178, 1180-81 (3d Cir. 1992); see also 20 C.F.R. § 404.1520. Johnson has argued on appeal that the ALJ erred at various steps in the evaluation process. Before analyzing Johnson's arguments, however, we will recount those facts necessary to our analysis.

Johnson graduated from high school and attended college for a year. She worked at Temple University Hospital in various positions for approximately twenty-nine years. In her application, Johnson alleged disability beginning February 3, 1999, based on high blood pressure, a lung reduction, asthma, diabetes, emphysema, and a nodule in her left lung. The medical evidence reveals multiple treatments for lung problems and pain, as well treatment for depression. The administrative hearing took place on August 9, 2000, at which time Johnson was fifty-five years old. Subsequently, the ALJ denied Johnson's claim. The ALJ determined that Johnson had one severe impairment: chronic obstructive pulmonary disorder (COPD). He found, however, that the impairment neither qualified her as *per se* disabled at step three in the evaluation process, see Plummer v. Apfel, 186 F.3d 422,

3

428 (3d Cir.1999), nor prevented her from performing her past relevant work as an information clerk as determined at step four.

We first address Johnson's argument that the Commissioner's finding at step three in the evaluation process – that Johnson does not suffer from an impairment that meets or equals an impairment found in the "Listing of Impairments," 20 C.F.R. Appendix 1 to Subpart P of Part 404 – is not supported by substantial evidence. Specifically, Johnson argues that the ALJ should have found that she met or equaled the requirements of Listings 3.02(A) and 3.02(C)(1) of the Listing of Impairments.

Under Listing 3.02(A), a claimant, like Johnson, who suffers from COPD due to any cause meets the Listing if she has a forced expiratory volume in one second (FEV1) equal to or less than the values specified in a table included in the Listing. Based on Johnson's height, 59 inches, an FEV1 of 1.05 or less would qualify her as disabled. On June 29, 2000, Johnson was tested with a .94 FEV1 – a measurement that met the Listing requirement. This test was taken after Johnson's application for disability benefits was denied (and after the state agency medical experts reviewed her file), but before the administrative hearing before the ALJ. On two prior occasions, however, doctors tested Johnson's FEV1 level above the Listing level. On January 28, 1999, Johnson's FEV1 equaled 1.06 – .01 above the Listing level. On December 2, 1999, Johnson's FEV1 readings were at or above 1.18.

Under Listing 3.02(C)(1), a claimant suffering from chronic impairment of gas exchange due to clinically documented pulmonary disease with "single breath DLCO

4

[(diffusing capacity of the lungs for carbon dioxide)] less than 10.5 ml/min/mm Hg or less than 40 percent predicted values" is disabled. On September 25, 1998, Johnson's DLCO level was tested at 32% of predicted value – a level that met the Listing requirement. On June 29, 2000, tests recorded Johnson with a DLCO of 6.3, which was 31% of the predicted value. Thus, both figures met the Listing criteria. The Commissioner has not cited to any other tests of Johnson's DLCO. Therefore, at the time of her hearing, Johnson had two DLCO scores, received less than two years apart, that met the Listing requirement for DLCO, and no inconsistent test scores.

The ALJ dismissed the results of the FEV1 and DLCO tests that met the requirements of the Listings because he found them "inconsistent" both with other results from tests of Johnson's pulmonary function capacity and with Johnson's activities of daily living. As a result, he found that her condition did not meet or equal the Listings. Johnson claims that substantial evidence did not support this determination. She argues that, for substantial evidence to support this determination, the ALJ had to obtain an updated medical expert's opinion regarding whether she met or equaled the Listings based on the FEV1 and DLCO scores. In addition, Johnson also argues that the ALJ's decision was not based on the substantial evidence because he failed to discuss in his opinion her DLCO score from September 25, 1998.

We agree with Johnson and find that substantial evidence did not support the ALJ's determination that Johnson did not meet or equal Listing 3.02A or Listing 3.02(C)(1). While we decline to determine on the record before us that Johnson's pulmonary

functioning did meet or equal either Listing, we conclude that the ALJ should not have simply ignored the supporting DLCO test results or summarily dismissed supporting test results as "inconsistent." In line with his duty to explain why he credited certain medical evidence but not other medical evidence, see Ventura, 55 F.3d at 904, an ALJ must explain a decision to credit some test results while not crediting others. Here, the ALJ should have considered all of the evidence and given a reason for discounting the evidence he rejected. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 119-20 (3d Cir. 2000) (stating that an ALJ must set forth the reasons for his conclusion). Moreover, the ALJ should not have considered whether Johnson's activities of daily living were consistent with a finding that her condition met or equaled either of the Listings. See 20 C.F.R. § 404.1526(b) ("We will always base our decision about whether your impairment(s) is medically equal to a listed impairment on medical evidence only."). In determining whether a claimant meets a Listing, an ALJ should not look beyond the medical evidence of signs, symptoms and laboratory findings. 20 C.F.R. § 404.1526(a).

The duty of an ALJ to consult a medical expert is discussed in Social Security Ruling 96-6p (1996). An ALJ or the Appeals Council "must obtain an updated medical opinion from a medical expert . . . when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Id. Although they lack the force

of regulations, social security rulings are "binding on all components of the Social Security Administration." 20 C.F.R. 402.35(b)(1). While this ruling gives the ALJ broad discretion in determining whether to call a medical expert to testify, under the facts of this case, it appears that the ALJ should do so in order to meet his obligation of fully developing the administrative record. <u>Ventura</u>, 55 F.3d at 902 ("ALJs have a duty to develop a full and fair record in social security cases.").[1]

Next, Johnson contends that the ALJ erred at step four in the analysis by not referring the issue of her capacity for certain work to a vocational expert. At step four of the evaluation process, an ALJ determines whether a claimant has the residual functional capacity to perform her past relevant work – either as she performed it or as it exists in the national economy. 20 C.F.R. § 404.1520(e). Residual functional capacity (RFC) is defined as what a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a). The ALJ determined that Johnson "retained the residual functional capacity to do work that entails lifting and carrying less than 10 pounds, standing and walking from 2 to less than 6 hours, and sitting up to 8 hours alternating with standing at intervals not exceeding 1 to 2 hours. The work must also require no more than occasional stooping, and no pushing, pulling, climbing, crawling, or balancing. Furthermore, the work must not expose the claimant to poor ventilation, heights, temperature extremes, chemicals, wetness, dust,

---

[1] At oral argument, the Commissioner argued that many of the tests of Johnson's pulmonary function capacity were invalid. Because the ALJ did not discuss the validity of the test scores, we do not as well. On remand, however, the Commissioner is free to challenge the validity of the test scores.

7

fumes, odors, gases or humidity." The ALJ determined that, based on her RFC, Johnson could perform one of her past relevant jobs, information clerk, as it existed in the national economy, but not as she had performed it (at Temple University Hospital). Thus, the ALJ found Johnson not disabled.

Rather than relying on a vocational expert, the ALJ based his finding that Johnson could do the work on the definition of "information clerk" found in the Dictionary of Occupational Titles (DOT) § 237.367-022. The DOT states, inter alia, that "information clerk" is sedentary work. Under the regulations, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

Johnson asserts that substantial evidence did not support the ALJ's finding that she could perform her relevant job as information clerk as it is generally performed in the national economy. While we do not agree with Johnson that the ALJ was not entitled to rely solely on the DOT, we are troubled by the fact that the ALJ did so but at the same time found that Johnson could not perform a full range of sedentary work. The ALJ found that Johnson must alternate sitting with standing "at intervals not exceeding 1 to 2 hours" and that "the work must not expose the claimant to poor ventilation, heights, temperature extremes, chemicals, wetness, dust, fumes, odors, gases or humidity." Without the ALJ

8

offering more support for his conclusion, we do not see how these limitations did not erode Johnson's occupational base by restricting her ability to perform the full range of sedentary work. Thus, given her residual functional capacity, it is not clear from the ALJ's decision whether the position of information clerk, as Johnson's residual functional capacity would enable her to perform it, exists in significant numbers in the national economy. On remand, if the ALJ proceeds to step four, he should further clarify the reasons for his conclusion that Johnson can perform the job of information clerk.

In addition, Johnson challenges two other aspects of the ALJ's decision. First, Johnson argues that the ALJ erred in finding that her depression was not a "severe" impairment. An impairment is considered "severe" if it significantly limits a claimant's physical and mental ability to do basic work activities. 20 C.F.R. § 404.1521. Johnson, however, admitted that her condition was improving, that she was taking medication to treat it, and that it, in fact, would not prevent her from working. Therefore, substantial evidence clearly supports the ALJ's finding that her depression was not "severe." Second, Johnson argues that the ALJ failed to consider properly her subjective complaints of pain. The ALJ, however, noted Johnson's complaints of pain, but concluded that the pain was not as severe as she contended, given that medical records showed dissipation with treatment. We believe that substantial evidence also supports this finding.

Accordingly, we will affirm in part, reverse in part, and remand to the District Court with instructions to return the case to the Commissioner for further proceedings in accordance with this opinion.

9

TO THE CLERK OF COURT:

Please file the foregoing opinion.

_____
Circuit Judge

Dated: