

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2006

# Landeta v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3506

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Landeta v. Comm Social Security" (2006). *2006 Decisions*. Paper 594.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/594

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 05-3506
_____

MARIA LANDETA,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY


Appeal from the United States District Court
for the District of New Jersey
(Civil Action No. 04-2311)
District Judge: Hon. John W. Bissell

Submitted under Third Circuit LAR 34.1(a)
May 18, 2006

Before: SCIRICA, Chief Judge,
and McKEE and STAPLETON, Circuit Judges


(Opinion filed: August 14, 2006)


OPINION

McKEE, Circuit Judge.

    Maria Landeta appeals the District Court's order affirming the decision of the

Commissioner of Social Security denying Landeta's application for benefits under the Social Security Act. 42 U.S.C. § 423 *et seq.* The District Court had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(g). We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm.

## I.

Inasmuch as we write primarily for the parties who are familiar with the procedural and factual background of this case, we need not reiterate them here except insofar as is helpful to our discussion.

The ALJ's decision is the final decision of the Commissioner when the Appeals Council denies a request for review. *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999). Our scope of review is limited to determining if the ALJ's denial of benefits is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(g); *Hartranft*, 181 F.3d at 360. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal citation omitted). A decision by the Commissioner that is supported by substantial evidence will be upheld, even if we might have reached a different conclusion from the facts presented. *Hartranft*, 181 F.3d at 360.

In order to establish disability under the Social Security Act, a claimant must establish a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988) and 42 U.S.C. § 423(d)(1)). The claimant is prevented from engaging in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 427-28 (quoting 42 U.S.C. § 423(d)(2)(A)).

A claim of disability is evaluated pursuant to the five-step procedure set forth at 20 C.F.R. §§ 404.1520 and 416.920. *See Plummer*, 186 F.3d at 428. First, the Commissioner must determine if the claimant is currently engaging in substantial gainful activity. If so, the claim will be denied. *Id.* Second, the Commissioner must determine whether the claimant is suffering from a severe impairment. If the claimant can not establish this, the claim will be denied at this step. *Id.* Third, if the claimant is suffering from a severe impairment, the Commissioner then looks at the impairments listed in 20 C.F.R. § 404.1520(d) and determines whether the claimant's medical evidence establishes one of these impairments or its equivalent. *Id.* If it does not, the analysis proceeds to the

next two steps. Fourth, the Commissioner must consider whether the claimant possesses the residual functional capacity to perform her past relevant work. *Id.* (citing 20 C.F.R. § 404.1520(d)). The claimant has the burden of establishing that she is not able to return to her past relevant work. *Id.* Step four includes the following three "substeps": (i) "the ALJ must make specific findings of fact as to the claimant's residual functional capacity"; (ii) "the ALJ must make findings of the physical and mental demands of the claimant's past relevant work"; and (iii) "the ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability needed to perform the past relevant work." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). If the claimant meets her burden, the burden then shifts to the Commissioner for the fifth and final step. In this fifth step, the Commissioner must demonstrate that the claimant is able to perform other available work; otherwise the claim of disability must be granted. *Id.* (citing 20 C.F.R. § 404.1520(f)).

Since Landeta's claim is based in part on a mental impairment, additional regulations govern our inquiry. *Id.* (citing 20 C.F.R. § 404.1520a). Under these regulations, the hearing officer and the ALJ must "record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record, in order to determine if a mental impairment exists." *Id.* (citing 20 C.F.R. § 404.1520a(b)(1)). If the examiner finds an impairment, he/she  must determine the

4

presence of certain medical conditions relevant to the claimant's ability to work. *Id.* (citing 20 C.F.R. § 404.1520a(b)(2)). The examiner must then determine whether the mental impairment is "severe" and whether it reaches the level of a listed disorder. If the disorder is severe, though not at the level of a listed impairment, the examiner must conduct a residual functional capacity assessment. *Id.* (citing 20 C.F.R. § 404.1520a(c)(2) & (3)).

## II.

Here, the record shows that Landeta's daily activities include grocery shopping, cooking, and performing some household chores, although the chores often result in pain the next day. She likes to read, watch television, and visit family and friends once a week. She is able to travel by herself and utilize public transportation.

Landeta has been examined by physicians on at least four occasions since the year 2000. On October 26, 2000, she was examined at the Queens Health Network Department of Psychiatry, where her chief complaint was: "I need a medication." Landeta also complained of general anxiety and was hypothyroid. The examining physician determined that Landeta's orientation to person, place, and time were within normal limits; as were her memory, fund of knowledge, judgment, insight, impulse control, and concentration. She received a prescription for medication and a follow-up appointment.

5

On October 15, 2001, Landeta was examined by a psychiatrist, Dr. Richard King, at the request of the Commissioner. Landeta reported that she had never been hospitalized for any psychiatric condition and was undergoing outpatient treatment at Elmhurst Hospital. She reported taking Elavil, and mentioned that she had been anxious and depressed because of her health problems. She also stated that she lived alone and was able to perform household chores and routine activities of daily living, including shopping.

Dr. King found Landeta cooperative and oriented to time, place, and person. He concluded that her speech was coherent and relevant and that she had no thought disorder. He also noted that she was not in acute stress, nor was she significantly depressed or anxious. She had average intellectual functioning and fair insight and judgment. Landeta's attention, concentration, and fund of information were adequate. He also concluded that she had a satisfactory ability to understand, carry out, and remember instructions, and to respond appropriately to supervision, coworkers, and the pressures of work. Dr. King diagnosed Landeta with "adjustment disorder of adult life, anxious and depressed mild degree," and opined that Landeta might benefit from psychiatric treatment.

Dr. Soo Park examined Landeta at the Commissioner's request. Landeta reported having arthritis for the past year and a half, as well as years of suffering from psoriasis,

hypothyroidism, and depression. She had a history of joint pain in her shoulder, arm, and back, but no history of injury. She reported that she used Celebrex for the arthritis and cortisone cream for the psoriasis. However, that caused skin rashes "all over." She also reported using amitriptyline, 25 mg, for her depression and said her symptoms were under control. She stated she spent her days doing household chores and watching television.

Dr. Park observed "minimal" psoriatic rashes on Landeta's arms and legs and diagnosed psoriasis with little skin changes. Dr. Park also observed that Landeta was able to dress and undress and get on and off the examination table without difficulty and walk normally. Landeta's range of motion and musculoskeletal system were normal. An x-ray of her lumbar spine showed "minimal" ostephyte formation. Her neurological review showed full orientation, intact cranial nerves and cerebellar functions, normal motor and sensory systems, and eighty degrees of straight leg raising. Dr. Park further diagnosed osteoarthritis with normal range of motion, finding that Landeta had a mild limitation in lifting, bending, walking, standing, and pushing or pulling arm controls. In addition, Landeta was diagnosed with hypothyroidism and depression.

Landeta was also examined by a State agency psychiatrist, Dr. S. Hou, who performed a Mental Residual Functional Capacity Assessment. Dr. Hou found that Landeta had moderate restriction of activities of daily living, and moderate difficulties in social functioning, maintaining concentration, persistence, or pace; and insufficient

7

evidence of repeated episodes of decompensation. In completing a mental residual functional capacity assessment, Dr. Hou determined that Landeta was not significantly limited in fourteen of the twenty work-related areas, and was moderately limited in the six areas that he detailed. He concluded that she was able to understand, remember, and carry out simple tasks, and relate appropriately to coworkers and supervisors in a routine work setting. Dr. Hou also determined that Landeta had adjustment disorder of adult life, anxiety, and mild depression.

### III.

The ALJ, "upon reviewing all the evidence," concluded that Landeta "is not disabled within the meaning of the Social Security Act." App. A30. Thus, Landeta was not entitled to disability insurance benefits for the period between August 1, 1991 to December 31, 1993 or for SSI for the period between August 9, 2001 and December 13, 2002. The ALJ discussed Landeta's proffer of the medical assessments of the Queens Health Network Department of Psychiatry, Dr. King, Dr. Park, and Landeta's statements concerning her treating psychiatrist, Dr. Canto.

In undertaking the five-step analysis, the ALJ determined that: (1) Landeta had not engaged in any substantial gainful activity since her alleged onset date; (2) the evidence established the existence of "severe" impairments involving osteoarthrits and an adjustment disorder; and (3) the evidence failed to disclose any medical findings meeting

8

or equaling in severity the clinical criteria of any impairment listed in the relevant regulations. App. A-30-35. The ALJ explained that, in evaluating Landeta's subjective complaints, he had "given careful consideration to such matters as: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g. movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record." App. A-32. The ALJ concluded that Landeta's complaints of disabling symptoms could not reasonably be accepted. *Id.* The ALJ further stated that the medical evidence "reveals objective findings, that, in my opinion, could not reasonably produce the alleged subjective complaints precluding work related activities." *Id.* Although Landeta complained of arthritis, her November 16, 2001 consultative examination demonstrated that she was within the normal limits. Her diagnosis of psoriasis was mild, there was no evidence of acute dryness, scaling, or cracking, and the condition had been well-controlled with topical medication. *Id.*

With regard to Landeta's mental status, the ALJ determined that although the evidence established Landeta suffered from an affective disorder and had certain slight functional restrictions, and although she had been diagnosed with depression by the Queens Health Network Department of Psychiatry, a report of October, 2000 was within

9

normal limits. App. A-33. Further, Dr. King remarked in October, 2001 that Landeta was not significantly depressed or anxious. *Id.* Moreover, Landeta's activities of daily living were not compromised and there was no evidence that she had any limitations on her understanding, carrying out, or remembering instructions. Her ability to respond appropriately to supervision, co-workers, or work pressures in a work setting was not compromised. *Id.* Accordingly, the ALJ concluded that Landeta did not have any significant mental limitations that precluded her from performing the mental demands of her past work.

The ALJ determined that the evidence failed to demonstrate that Landeta was unable to perform the basic work activities associated with work and failed to identify a disability. *Id.* Instead, the ALJ concluded that the evidence established that Landeta could perform many of the basic activities associated with work. Although the record contained some evidence of Landetta's limitation, the ALJ found at step four of the inquiry that she "retain[ed] the residual functional capacity to perform the exertional demands of medium work[1] with lifting and carrying twenty-five pounds and sitting,

---

[1] "Medium work" is defined as "involv[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. This definition also encompasses the definitions of "sedentary work" and "light work." *Id.* "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light

10

standing, and walking for six hours during the course of an eight hour day." *Id.* The ALJ cited the opinions of the state agency physicians "who also assessed that the claimant could perform medium work." *Id.* The ALJ found that the Landeta's past relevant work as a food assembler required her to lift and carry items weighing a maximum of ten pounds. *Id.* Based on his findings, the ALJ determined Landeta was able to perform her past relevant work. *Id.* at A-34.

## V.

As stated above, we must determine whether substantial evidence supports the decision of the ALJ, not whether the facts might have led us to a different conclusion. Thus, we must decide whether the record as a whole would allow a reasonable mind to accept the conclusions reached by the Commissioner.

Initially, Landeta complains that the ALJ did not mention psychiatrist Dr. Hou's findings of several moderate limitations. She contends that this is contrary to our decision in *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981). There, we held that "the ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits. The ALJ's decision must be in writing and contain findings of fact and a statement of reasons in support thereof." *Cotter*, 642 F.2d at 704. Thus, the ALJ must not only state the evidence considered which supports the result reached, but

---

work, you must have the ability to do substantially all of these activities." *Id.*

11

must also indicate what evidence was rejected. *Id.* at 705. The ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous. *Id.* at 707.

However, Landeta makes too much of Dr. Hou's report. Although he did find moderate limitations, his ultimate opinion was that Landeta was able to understand, remember, and carry out simple tasks, and relate appropriately to coworkers and supervisors in a routine work setting. That does not conflict with the findings of the ALJ, nor does it conflict with the opinion of Dr. King. To the contrary, the ALJ adopted Dr. Hou's ultimate conclusion. Accordingly, the failure to specifically mention Dr. Hou's findings of moderate limitations does not afford Landeta grounds for relief under *Cotter*.[2]

Landeta also contends that the ALJ failed to support his adverse finding that she retained residual functional capacity to perform her past relevant work. However, as stated above, it is the claimant's burden to establish that she is unable to return to her past relevant work. *Plummer*, 186 F.3d at 428. Moreover, the ALJ's finding that she could perform the requirements of her past relevant work is clearly supported by this record. The ALJ found Landeta's subjective complaints were not fully credible. If the symptoms suggest a greater functional restriction than is demonstrated by the objective evidence

---

[2] Furthermore, as the District Court pointed out, the form filled out by Dr. Hou had spaces where he could indicate that functional limitations were "marked" or "extreme," both of which had asterisks indicating that they were "degree[s] of limitation that satisfies the functional criterion." Tr. 139.

alone, the Commissioner considers evidence such as the claimant's statements, daily activities, duration and frequency of pain, medication, and treatment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Commissioner has discretion to evaluate the credibility of the complaints and draw a conclusion based upon medical findings and other available information.

Here, the ALJ noted that Landeta's claims were not supported by the medical evidence and were also in conflict with some of her own statements to her physicians that she is able to live on her own, shop, do chores, read, and travel. Moreover, the ALJ's assessment of Landeta's residual functional capacity incorporated evidence from the work history report completed by the claimant. In that report, Landeta stated that she was required to lift weight up to ten pounds. That is consistent with "light work." *See* 20 C.F.R. § 404.1567. The ALJ is not required to use other sources, such as the *Dictionary of Occupational Titles*, although it is in his discretion to do so. Nor must the ALJ use a vocational expert in making his assessment.

## V.

For the reasons set forth above, we hold that the ALJ reasonably concluded at step four that Landeta was not disabled. Accordingly, we will affirm the order of the District Court upholding the ALJ's ruling.