**Kevin KNOX, Appellant**

v.

**COMMISSIONER OF SOCIAL SECURITY.**

**No. 09–1358.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 19, 2009.

Filed: Feb. 12, 2010.

Agnes S. Wladyka, Esq., Mountainside, NJ, for Plaintiff–Appellant.

Vernon Norwood, Esq., Office of United States Attorney, New York, NY, for Defendant–Appellee.

Before: RENDELL, BARRY, and CHAGARES, Circuit Judges.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Kevin Knox appeals from a District Court order affirming the denial of Disability Insurance Benefits and Supplemental Security Income under the Social Security Act by the Commissioner of Social Security (the "Commissioner"). We will affirm.

## I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. On June 3, 2003, Knox filed an application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, alleging disability since March 16, 2002 due to HIV and pulmonary hypertension. The Commissioner denied his claims, both initially and upon reconsideration. Knox requested a hearing before an administrative law judge ("ALJ"), which was held on December 7, 2006. In a decision issued February 9, 2007, the ALJ found that Knox was not disabled for purposes of receiving Social Security benefits. The Appeals Council denied review, making the ALJ's February 9, 2007 decision the final decision of the Commissioner. On December 21, 2007, Knox filed a complaint in District Court challenging the denial. The District Court found that the Commissioner's decision was supported by substantial evidence. By order entered December 9, 2008, 2008 WL 5156672, the District Court dismissed the action. Knox timely appealed.

## II.

The District Court had subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction to review the District Court's decision under 28 U.S.C. § 1291. Our review is limited to determining whether substantial evidence supports the ALJ's finding that Knox was not disabled.

42 U.S.C. §§ 405(g), 1383(c); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). " 'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

## III.

The Social Security Act authorizes the Commissioner to pay social security benefits to disabled persons. 42 U.S.C. §§ 423(d), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner applies a five-step test to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first two steps require the claimant to demonstrate that he is not currently engaging in substantial gainful activity, and that he is suffering from a severe impairment. *Id.* If the claimant progresses to step three, then the question becomes " 'whether the impairment is equivalent to one of a number of Listed Impairments [articulated in 20 C.F.R. Pt. 404, Subpt. P, App. 1] that the Commissioner acknowledges are so severe as to

preclude substantial gainful activity.'" *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)); *see also* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's specific impairment is not a Listed Impairment, the ALJ must consider whether the claimant's impairment or combination of impairments is "medically equivalent" to a Listed Impairment. *See* 20 C.F.R. § 404.1526(a). An impairment or combination of impairments is "medically equivalent" to a Listed Impairment if it is "at least equal in severity and duration to the criteria of any [L]isted [I]mpairment." *Id.* In other words, the claimant's impairment "'must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir.1992) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). A claimant who satisfies step three "is conclusively presumed to be disabled." *Knepp*, 204 F.3d at 84 (citation and quotation marks omitted). A claimant who fails at step three must continue to steps four and five.

At step four, the question is "whether the claimant retains the residual functional capacity to perform [his] past relevant work." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.1999). It is the claimant's burden to establish an inability to return to his past relevant work. *See id.* If the claimant satisfies this burden, then the burden of production shifts to the Commissioner to show, at step five, that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, edu-

cation, and past work experience to determine whether the cumulative effect of all of the claimant's impairments renders him capable of working. *See* 20 C.F.R. § 404.1520(g).

## IV.

On appeal, Knox argues that the ALJ's decision is not supported by substantial evidence. Knox argues specifically that the ALJ erred: at step three by failing to find that his conditions met the Listed Impairments; at step four by improperly evaluating the medical evidence; and at step five by posing an inadequate hypothetical to the vocational expert. We agree with the District Court that none of these arguments has merit.

## A.

Knox argues that the ALJ erred at step three by failing to find that Knox's conditions met, individually or in combination, one of the Listed Impairments, specifically 1.04 for "Disorders of the Spine" and 12.06 for "Anxiety related disorders." For both of these Listed Impairments, the ALJ recognized that aggravating factors must be present for the condition to meet the requirements of the Listings. For Listing 12.06, the ALJ concluded that Knox's "alleged anxiety related disorder (panic disorder with partial agoraphobia) is not accompanied by a 'marked' restriction of the activities of daily living, or 'marked' difficulties in maintaining social functioning, or 'marked' difficulties in maintaining concentration, or 'repeated' episodes of decompensation, or the complete inability to function independently outside the area of his home." Appendix ("App.") 16–17 (citations omitted). Knox argues that he suffers from a panic disorder with agoraphobia and phobias of elevators, Knox Br. 50, but the ALJ concluded that the medical evidence did not support Knox's assertion

that his condition was sufficiently debilitating within the meaning of the Listings. The ALJ's determination is supported by substantial evidence.

With respect to Listing 4.04, the ALJ found that Knox's "musculoskeletal disorders of the cervical and lumbar spine have not resulted in compromise of a nerve root with evidence of nerve root compression characterized [by] neuro-anatomic distribution of pain, marked limitation of motion of the spine, motor loss, [or] sensory or reflex loss." App. 17. Knox cannot demonstrate his claimed spine disorders were sufficiently aggravated to meet the definition supplied by the regulations. The evidence of "mild bilateral median nerve entrapment neruopathy [sic] (carpal tunnel syndrome) affecting sensory components," Certified Administrative Record ("Tr.") 422, reduced range of motion in the neck and lower back, Tr. 251, and "limitations due to osteoarthritis and neuropathy," Tr. 271, does not compel a conclusion that Knox meets the requirements of the Listings. The ALJ's evaluation of this Listed Impairment is supported by substantial evidence.

### B.

Knox raises two challenges to the ALJ's determination at step four. First, Knox argues that the ALJ improperly evaluated the medical evidence, contending that the ALJ "failed to give proper credence to the complaints of Mr. Knox concerning his pain, limitation of motion and function, weakness, ... numbness, shortness of breath, headaches, dizziness and fatigue, mental impairments including anxiety, panic attacks, phobias and depression, and cardiac condition and chest pains." Knox Br. 31–32 (citations omitted). If the medical evidence suggests a claimant "has an impairment which is reasonably expected to produce some pain, [the ALJ] must consider all of the evidence relevant to the individual's allegations of pain, even if the

alleged pain is more severe or persistent than would be expected." *Sykes v. Apfel,* 228 F.3d 259, 266 n. 9 (3d Cir.2000) (citations omitted). The ALJ "must explicitly weigh the evidence and explain a rejection of the evidence." *Id.* (citations omitted).

■ In this case, the ALJ explained in detail the reasons for partially discrediting Knox's testimony regarding his claimed chest pain, diarrhea, weakness, fatigue, neck, low back and bilateral knee pain. *See* App. 18–19. Specifically, the ALJ found the scope of Knox's claimed impairments to be inconsistent with his choice of pain medication, the lack of frequent inpatient admissions, emergency room visits, or protracted physical therapy, and the clinical findings regarding his claimed impairments. App. 18. The ALJ also explained the inconsistencies in Knox's testimony regarding his claimed psychiatric conditions that led him to discount this testimony. *See* App. 19–20. We agree with the District Court that the ALJ's evaluation of the medical evidence in arriving at the residual functional capacity assessment, including the evaluation of Knox's subjective complaints, was supported by substantial evidence.

■ Knox further argues that the ALJ erred in improperly relying "on an unsupported opinion of a non examining doctor, Dr. Fechner, based on a misinterpretation of the record" to "supplant the medical opinion of a treating physician." Knox Br. 56–57. Knox correctly points out that the reports of treating physicians are to be afforded "great weight," *id.* 57 (quoting *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000)), but Knox mischaracterizes the ALJ's assessment. The ALJ cited Dr. Fechner's testimony that Knox could perform light work, *see* App. 20, but the residual functional capacity assessment did not ignore the other medical evidence cited in Knox's brief. The ALJ discussed the re-

ports from each of Knox's treating physicians, Dr. Mangia, Dr. Dungo, and Dr. Hriso, *see* App. 17, and discussed their opinions—along with the objective medical evidence—in detail. *See* App. 17–18. He concluded that Knox's HIV infection has been largely asymptomatic, based on Dr. Mangia's questionnaire. App. 17. He further noted that Knox's CD–4 count has been high, his viral load relatively low, and that Knox has not exhibited secondary complications that often arise from more debilitating HIV infections. App. 18. The ALJ concluded that Knox's pulmonary hypertension was not aggravated by any "significant secondary complications or target end-organ damage," based on the numerous diagnostic imaging results in the record. App. 17–18. The ALJ found that Knox's orthopedic impairments did not result in debilitating pain or limitation in function, based on several imaging studies. App. 18. The ALJ evaluated the evidence regarding Knox's mental impairments and concluded that they would impose only limited restrictions on his possible working environments. App. 19. The ALJ discounted the "check-list" questionnaire prepared by Dr. Hriso, *see* Tr. 482–84, because these conclusions "are not supported by objective narrative mental status findings of any specificity." App. 19; *accord* App. 20 (discounting this check-list form because Dr. Hriso "essentially checked off every non-exertional limitation on the form, even some that were not alleged"). The ALJ's residual functional capacity assessment is explained in detail and supported by substantial evidence.

## C.

Knox's final argument is that the ALJ erred at step five by relying on a hypothetical posed to the vocational expert that failed to account for his "limitations as to the need to avoid wetness, fumes, gases, temperature extremes, heights, inability to push, pull, kneel, bend or stoop" based on

Knox's "pulmonary and bilateral knee impairments." Knox Br. 59–60 (citing Tr. 489–96). However, an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford*, 399 F.3d at 554 (emphasis in original). Rather, "the hypotheticals posed must accurately portray the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments as contained in the record." *Id.* (quotation marks omitted). In other words, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" *Id.* (emphasis in original) (citation omitted). Here, the ALJ posed a hypothetical that mirrored Knox's functional limitations that the ALJ determined had been established by the medical evidence. *Compare* Tr. 593–94 (hypothetical posed to vocational expert) *with* App. 19 (ALJ's residual functional capacity assessment); *accord* App. 21 (explaining that Knox's other proposed limitations "were totally lacking in credibility"). We agree with the District Court that the ALJ incorporated the credibly established limitations in the hypothetical, leading the ALJ to conclude that Knox could perform work existing in significant numbers in the national economy. The ALJ's determination that Knox was not disabled for purposes of receiving Disability Insurance Benefits and Supplemental Security Income under the Social Security Act is supported by substantial evidence.

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.