Paul S. Diamond, J.
On April 21, 2016, Plaintiff filed this action for review of the Social Security Administration's denial of his application for disability benefits for all dates prior to July 10, 2015. (Doc. No. 3.) On January 17, 2018, Magistrate Judge Jacob P. Hart issued a Report and Recommendation, advising me to enter partial Judgment in Plaintiff's favor and remand the matter to the Commissioner for a hearing on the independent medical expert's answers to post-hearing interrogatories. (Doc. No. 27.)
*427 Plaintiff objects, asking me simply to reverse the ALJ's decision and award disability benefits back-dated to October 17, 2009. (Doc. No. 29.) I will sustain Plaintiff's objections in part and adopt Judge Hart's Report and Recommendation in part.
I. LEGAL STANDARDS
In reviewing the ALJ's decision to deny benefits, I am bound by the ALJ's factual determinations, if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009). I review de novo the ALJ's rulings of law. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).
I must review de novo those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1) ; Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). I may "accept, reject, or modify, in whole or in part, [the Magistrate Judge's] findings and recommendations." 28 U.S.C. § 636(b)(1).
II. PROCEDURAL HISTORY
On March 12, 2010, Plaintiff filed his third Application for Supplemental Social Security Benefits, alleging that his various impairments, including bipolar disorder, insomnia, depression, Hepatitis C, degenerative disc disease, and severe fatigue, have made him disabled since October 17, 2009. (R. 171-74, Doc. No. 8-5; Pl.'s Brief & Stat. Issues 2, Doc. No. 14.)
On June 11, 2012, Administrative Law Judge Susan A. Flynn denied Plaintiff's application. (R. 8-26, Doc. No. 8-2.) On November 19, 2013, Plaintiff filed an action in this Court challenging that denial. (Compl., Doc. No. 3; Gonzalez v. Colvin, No. 13-6714 (E.D. Pa Nov. 20, 2013).) On January 26, 2015, Judge Restrepo (then of this Court) ruled that: (1) the ALJ's erroneous failure to address record evidence of Plaintiff's Hepatitis C was not harmless because "there is evidence in the record of symptoms that could be caused by hepatitis C"; and (2) the ALJ erred in failing to address "the extensive evidence of Plaintiff's sleep difficulties contained in Plaintiff's treatment notes." (Order ¶¶ 4, 7, Doc. No. 31, Gonzalez v. Colvin, No. 13-6714, 2015 WL 1501624 (E.D. Pa. Jan. 26, 2015).) Judge Restrepo entered partial Judgment for Plaintiff and remanded to the Commissioner. (Judgment, Doc. No. 32, Gonzalez v. Colvin, No. 13-6714, 2015 WL 1501624 (E.D. Pa. Jan. 26, 2015).)
On remand, Plaintiff's application was adjudicated by ALJ Paula Garrety. After an October 21, 2015 hearing, the ALJ sent interrogatories to an "impartial medical expert," Dr. Robert Sklaroff (an oncologist), to explain how notations of "abnormal iron saturation" and "elevated ferritin" in Plaintiff's medical records could affect Plaintiff's ability to function. (R. 852-95, Doc. No. 8-17; R. 1530-38, Doc. No. 8-27.) On December 9, 2015, the ALJ denied as untimely Plaintiff's request for a hearing on Dr. Sklaroff's post-hearing interrogatory responses. (R. 1104, Doc. No. 8-20; R. 1207, Doc. No. 8-22.) On January 7, 2016, the ALJ granted Plaintiff's application in part, ruling that Plaintiff became disabled on July 10, 2015 and suffered from the following severe impairments: "Depressive *428 Disorder ; Anxiety Disorder; Chronic Hepatitis C ; and degenerative disc disease involving the lumbar spine." (R. 832-51.) Judge Garrety thus rejected Plaintiff's alleged onset date of October 17, 2009. (Id. at 836.)
On April 20, 2016, Plaintiff filed this action challenging the ALJ's disability onset date determination. (Compl., Doc. No. 3.) Plaintiff argues that the ALJ: (1) erred in finding that Plaintiff's disability did not arise before July 10, 2015; (2) erred in rejecting the opinion of treating physician Dr. Vishal Patel that Plaintiff suffers from severe fatigue caused by Hepatitis C ; and (3) violated due process by denying Plaintiff's request for a hearing on Dr. Sklaroff's interrogatory responses. (Pl.'s Brief & Stat. Issues, Doc. No. 14.)
On December 12, 2016, the Commissioner conceded that the ALJ violated Plaintiff's due process rights by denying his hearing request, and moved for remand. (Mot. Remand, Doc. No. 15.) Plaintiff opposed remand, arguing that: (1) the record is fully developed and demonstrates that he is entitled to benefits as of October 17, 2009; and (2) remand would unnecessarily delay his award. (Pl.'s Resp. ¶¶ 6-8, Doc. No. 16.) On December 29, 2016, I denied the Commissioner's Motion and ordered her to address Plaintiff's other claims. (Doc. No. 17.)
On January 31, 2017, I referred this matter to Magistrate Judge Hey for a Report and Recommendation on Plaintiff's claims of error. (Doc. No. 19.) On January 9, 2018, the matter was re-assigned to Magistrate Judge Hart. (Doc. No. 25.) On January 17, 2018, Judge Hart issued his Report and Recommendation, advising that I enter partial Judgment for Plaintiff on his due process claim and remand the matter to the ALJ for a hearing on Dr. Sklaroff's interrogatory responses. (Doc. No. 27.) On January 30, 2018, Plaintiff filed his Objections. (Doc. No. 29). The Commissioner did not file a response.
III. DISCUSSION
Plaintiff objects to Judge Hart's Report and Recommendation, arguing that: (1) remand will not address or correct the ALJ's most significant errors; (2) Plaintiff's onset date of October 17, 2009 is consistent with the medical evidence and thus should be adopted; and (3) ALJ Garrety erred in rejecting Dr. Patel's opinion on the issue of Plaintiff's severe fatigue caused by his Hepatitis C. (Pl.'s Objs. 7, Doc. No. 29.)
A. Remand
Plaintiff argues that adopting Judge Hart's recommendation will leave the ALJ's errors unaddressed and is "inadequate in light of this case's eight-year history and well-developed record." (Id. ) Plaintiff submits that a hearing on the interrogatory responses will not resolve the more critical issues of Plaintiff's onset date and the ALJ's error in discounting Dr. Patel's opinion. (Id. at 8.) He argues that a remand would likely result in further litigation, increasing delay and imposing significant hardship on Plaintiff, who is awaiting five years of retroactive benefits. (Id. at 9.) Plaintiff also argues that remand is unnecessary because the fully developed record makes his case ripe for decision. (Id. at 10.) Additionally, Plaintiff correctly observes that I already rejected the Commissioner's request to remand the case for a hearing on Dr. Sklaroff's interrogatory responses. (Id. at 1; Order, Doc. No. 17.) He thus asks me simply to review the evidence in the record and make a decision regarding his onset date without further delay. (Pl.'s Objs. at 11.)
Judge Hart advises that remand would be useful to Plaintiff's claim of error regarding his Hepatitis C symptoms, as well as his other claims, "because the degree to *429 which the ALJ's decision is supported by substantial evidence cannot be determined without addressing her reliance upon Dr. Sklaroff's interrogatory answers which addressed all of Gonzalez's impairments." (R. & R. 5, Doc. No. 27.) I disagree.
Remanding on this basis alone will not address the key issue here: Plaintiff's onset date. Further questioning regarding Dr. Sklaroff's interrogatory responses will not illuminate whether the ALJ applied the correct standard to determine Plaintiff's onset date. (See Pl.'s Brief & Stat. Issues 7-16.) Dr. Sklaroff did not address the issue of Plaintiff's onset date. (See R. 1530-32.) Accordingly, further proceedings regarding the degree to which the ALJ relied on Dr. Sklaroff's interrogatory responses will not change the analysis of whether her onset date decision was supported by substantial evidence.
As I explain below, I will nonetheless remand to the ALJ on the issue of Dr. Sklaroff's interrogatory responses because they will shed light on the question of whether Plaintiff's Hepatitis C warrants an earlier onset date determination. I will next review the record to determine if the ALJ's determination of Plaintiff's July 10, 2015 onset date is supported by substantial evidence, "a convincing rationale," and a proper analysis of the factors required by SSR 83-20.
B. Plaintiff's Disability Onset Date
Plaintiff argues that the ALJ erred in finding an onset date of July 10, 2015, because: (1) the ALJ did not comply with Social Security Regulation 83-20; (2) July 10, 2015, is an arbitrary onset date, and an earlier date is consistent with the record evidence; and (3) the ALJ relied improperly on a stale medical opinion. (Pl.'s Objs. 13, 18.)
To determine the onset date for an applicant's disability that does not arise from a traumatic event, the ALJ must consider the following factors: "the individual's allegation, the work history, and the medical evidence." SSR 83-20. Medical evidence is the "primary element in the onset determination." Id. Where the applicant's disability arises from a "slowly progressive impairment[ ]," establishing a precise date is difficult and requires the ALJ to use inference. Id. The ALJ is "free to accept some medical evidence and reject other evidence" as long as she "provides an explanation for discrediting the rejected evidence." Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir. 2014) ; 20 C.F.R. §§ 404.1527, 416.927. Furthermore, the ALJ may reject or credit a physician's medical opinion based on the existing medical evidence. Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) ; Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).
It is not necessary for the impairment to have reached listing severity as of onset date. SSR 83-20. Instead, "the onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual" from employment for a continuous year. Id."The individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." Id. The ALJ must, however, have a "convincing rationale" for the selected onset date. Id. Furthermore, the ALJ should adopt the applicant's alleged onset date "if it is consistent with all the evidence available." Id.
Judge Hart did not address the ALJ's onset date determination. The ALJ's decision does not provide any reasons for choosing July 10, 2015 as Plaintiff's onset date. The ALJ merely stated that "at all relevant times prior to July 10, 2015, *430 [Plaintiff] was capable of performing medium work" and that in reaching her decision, "great weight" was given to the opinion of the state agency psychological consultant, which she found to be "consistent with [Plaintiff's] treatment records that do not support more restrictive limitations." (R. 842.)
The Commissioner concedes that "the ALJ did not specifically refer to SSR 83-20," when finding an onset date but argues that "a reading of her decision as a whole shows that she considered all three factors." (Resp. 4, Doc. No. 18.) Both sides agree that the ALJ likely chose July 10, 2015 as the onset date because it was the date on which Dr. Reitano-Plaintiff's treating physiatrist-issued an opinion that Plaintiff was disabled. (Pl.'s Objs. 11; Resp. 5-6.) The Parties disagree, however, on whether the choice was supported by substantial evidence. Plaintiff argues that the choice was arbitrary and submits that the SSR 83-20 factors required the ALJ to pick Plaintiff's alleged onset date of October 17, 2009 "because it is consistent with the record evidence." (Pl.'s Objs. 11-12.) The Commissioner argues that the "ALJ reasonably picked [July 10, 2015] because the medical evidence did not support an earlier onset of disability." (Resp. 6.)
The ALJ's decision was based on a review and summary of Plaintiff's medical record, numerous medical opinions, and Plaintiff's own reported symptoms. Because Plaintiff argues that his bipolar disorder and treatment are consistent with an onset date of October 17, 2009, I will review only the record evidence relating to his mental health. (See Pl.'s Objs. 11-13.)
The Record Evidence
From October 2006 through February 2012, Plaintiff saw Dr. Manuel Troncoso, a therapist, for his "aggressiveness," as well as "depressed mood" and "sleep problems." (R. 433-43, Doc. No. 8-9.) Dr. Troncoso diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and back pain. (Id. at 443.) Plaintiff's therapy continued with Dr. Troncoso through February 2012. (See id. at 448-559, 701-30, Doc. Nos. 8-10-8-11, 8-14.). In September and October 2010, Dr. Troncoso noted that Plaintiff was "making poor progress" and exhibited "aggressive behavior" such as yelling, fighting and talking back. (Id. at 515-19.) Dr. Troncoso's progress and session notes from 2010 through 2011 reveal that Plaintiff's ability to cope with his aggressive behavior swung back and forth, as did Dr. Troncoso's perception of Plaintiff as "stable," "appropriate," "angry," "irritable," "coherent," and/or "expansive." (See id. at 518-59.) Plaintiff's coping ability continued to fluctuate wildly from November 2011 through February 2012. (See id. at 701-30.)
In May 2010, a State agency psychological consultant-Frank Mrykalo-reviewed the evidence and found that Plaintiff's mental impairments would not preclude him from "competitive employment on a sustained basis." (Id. at 841; see id. at 652-54, Doc. No. 8-12.) Mrykalo found Plaintiff presented with dysthymic disorder and opiate dependence, but those impairments did "not precisely satisfy the diagnostic criteria" for listed impairments. (Id. at 639, 642, 647.) Mrykalo's review noted functional limitations that were "mild" or "moderate" in degree and found that Plaintiff suffered from no episodes of decompensation. (Id. at 649.) In his RFC assessment, Mrykalo noted that Plaintiff's issues with understanding, memory, sustained concentration, persistence, social interaction, and adaption were either "not significantly limited" or "moderately limited." (Id. at 652-63.) Mrykalo based his assessment on a May 2010 report by Dr. Christos Ballas (Plaintiff's treating physiatrist) and an *431 April 2010 diagnosis of Hepatitis C by Dr. Nestor Madrinan. (Id. at 651, 654.) Dr. Ballas' opinion and Plaintiff's own statements were partially credited, to the extent they were consistent with the medical record. (Id. at 654.) Mrykalo does not appear to have reviewed Dr. Troncoso's treatment notes, even though portions would have existed prior to his May 2010 opinion. (Id. at 651, 654.)
Dr. Ballas treated Plaintiff from November 2006 through November 2013 and frequently prescribed him medication for anxiety and back pain. (Id. at 757-60, 1228-31, Doc. Nos. 8-15, 8-23.) Dr. Ballas's treatment notes indicate that Plaintiff's symptoms included anxiety, stress, poor coping skills, and periods of suicidal ideation. (See id.; see also id. at 1232-60.) These symptoms continued relatively unabated as Plaintiff's medications were continued, although Dr. Ballas noted Plaintiff often appeared as "calm," "coherent," and "cooperative" from 2011 through 2013. (Id. at 757-60, 1228-60.)
On May 25, 2012, Dr. Ballas completed a mental RFC assessment in which he rated Plaintiff as "Fair" to "Poor/None" in all categories regarding his ability to adjust to a job. (Id. at 828-31, Doc. No. 8-16.) In his RFC assessment, Dr. Ballas stated that Plaintiff had limited education and no writing skills. (Id. at 829.) Additionally, he noted Plaintiff's chronic lumbar pain, but otherwise did not detail the reasoning behind his assessment of Plaintiff's work-related limitations. (Id. at 828-31.)
In February 2014, Plaintiff began outpatient treatment with physiatrists Dr. Fernando Rivas and Dr. John Reitano. (Id. at 1266-1362, Doc. Nos. 8-24-8-25.) As the ALJ noted, these Doctors found that Plaintiff's "symptoms [were] progressively worsening" and included "mood swings, anhedonia, low energy, sleep disturbance, irritability, and social withdrawal," as well as "audio and visual hallucinations." (Id. at 842.) In March 2014, Plaintiff was diagnosed with bipolar affective disorder and continued to be treated for it in outpatient care throughout 2014. (Id. at 1277, 1280, 1282, 1284, 1286, 1288-1310, 1336-59.)
On February 19, 2014, Dr. Rivas wrote a history of Plaintiff's illness, stating that Plaintiff suffers from "depressive symptoms evidenced as frequent mood swings, 1-2 times every day, lack of motivation ... poor concentration, poorly able to maintain focus, no more than 15 minutes, constant anxious behavior" and "exacerbation of symptoms for the past 3-4 months." (Id. at 1473.)
Over the course of treatment from February through November 2014, Dr. Rivas noted that Plaintiff's symptoms of depression, mood swings, and helplessness improved for a few months, then worsened again. (Id. 1288-1313, 1337-62.) Plaintiff's mood and affect improved through May of 2015, but his auditory and visual hallucinations persisted. (See id. at 1472-1493, Doc. No 8-27.) In June 2015, progress charts showed that Plaintiff's mood was "more liable," his speech was "pressured and loud," and he presented as "more animated." (Id. at 1489-92.)
On July 10, 2015, Dr. Reitano completed a mental RFC assessment, rating Plaintiff as presenting with "Fair" or "Poor/None" in all categories related to his ability to make occupational adjustments. (Id. at 1466-69.) Dr. Reitano noted that Plaintiff "ha[d] difficulties maintain[ing] concentration, focus, memory problems, getting along with others, poor social skills, and difficulty dealing with daily stress." (Id. at 1469.) Dr. Reitano diagnosed Plaintiff with bipolar disorder and depression. (Id. at 1467.)
The ALJ's Review and Decision
Plaintiff's mental impairments are characterized by ALJ Garrety as depressive *432 disorder and anxiety disorder. (R. 837.) She found that these impairments were only "moderately interfering with his abilities" of daily living, social functioning, concentration, persistence, and pace prior to July 10, 2015. (Id. at 838.)
Crucially, the ALJ did not address whether Plaintiff's alleged onset date of October 17, 2009 was consistent with the medical record evidence, despite this being the required "starting point in determining the date of onset of disability." SSR 83-20. Plaintiff's work history is clearly consistent with this onset date-Plaintiff has not worked since 2005. (Pl.'s Brief & Stat. Issues, 8-9.) The ALJ mentions that "[t]here is no evidence of substantial gainful activity at any time relevant to [her] decision," but otherwise did not address how Plaintiff's lack of employment history factored into Plaintiff's onset date determination. (R. 837.) Thus, the ALJ did not address two of the three required SSR 83-20 factors.
Instead, in reaching her onset date decision, the ALJ relied heavily on Mrykalo's May 2010 opinion that Plaintiff was not precluded from employment because of his mental impairments. (Id. at 841.) Plaintiff objects to this reliance as outdated and irrelevant. (Pl.'s Objs. 16-18.) "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011.) As a result, there is "no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Id. Additionally, the assessment of a medical consultant is not "rendered less weighty because it does not consider medical records that did not exist at the time the assessment was made." Ladd v. Astrue, No. 12-4553, 2014 WL 2011638, at *1 n. 2 (E.D. Pa. May 16, 2014).
Accordingly, the ALJ did not err by relying on the 2010 state agency review to make her onset date decision, to the extent that she considered that Mrykalo did not review Dr. Tonosco's treatment notes before May 2010. These treatment records existed at the time the assessment was made. The ALJ was thus entitled to give Mrykalo's opinion weight to the extent that it was consistent with the underlying medical record before her. As neither the RFC assessment nor the ALJ's decision mentions Dr. Tronosco's treatment before 2010, it is apparent that not all the record evidence was considered in determining if Plaintiff's alleged onset date was consistent with the record evidence. The ALJ's onset date decision was not based on a proper application of SSR 83-20.
Moreover, assuming arguendo that the ALJ correctly determined that Plaintiff's alleged onset date was not consistent with record evidence as of May 2010, the 2010 RFC assessment was not a proper basis to determine when after May 2010 Plaintiff's onset date occurred. In Mrykalo's May 2010 opinion, he indicated that he had reviewed only a portion of the medical evidence and opinions existing as of its publication date. This could not be helpful in determining if an onset date before July 10, 2015, but after May 2010, was appropriate. The ALJ, thus, did not offer a convincing rationale for choosing the onset date of Plaintiff's bipolar disorder as July 10, 2015, as opposed to choosing his original diagnosis date of March 2014, or May 2012, when his depressive disorder symptoms worsened to the point that Dr. Ballas opined that Plaintiff was unable to function as an employee.
Instead, the ALJ noted that Plaintiff showed improvement in November of 2011, and again in February 2012. (Id. at 841.) The ALJ did not consider, however, the *433 swings and/or dips in Plaintiff's mood and aggressiveness that occurred between these treatment visits. (See id. at 729 (January 24, 2012 treatment notes state that "[Plaintiff] was unable to deal with his aggressive behavior" and marked him as "angry," "loud," and "expansive.").)
The ALJ also acknowledged Dr. Ballas's 2012 report, which provided that Plaintiff's "symptoms were of such severity that he would have no useful ability to" maintain a regular job schedule, concentrate, or "complete a normal workday." (Id. at 841.) The ALJ discounted this opinion however, believing it to be unsupported by the treatment records and was instead based in part by Plaintiff's lack of education and poor reading skills. (Id. at 841-42.) This inference is unjustified, considering that Dr. Ballas had treated Plaintiff for his depression and anxiety since 2006. Moreover, Dr. Ballas's s opinion is consistent both with his own treatment records and Dr. Troncoso's. The ALJ also found that Dr. Ballas's characterization of Plaintiff's limitations was "extreme," based on what she believed to be "improvement in his functioning" toward the end of 2011. (Id. at 841.) This again fails to account, however, for the swings in Plaintiff's behavior evidenced in 2011 and 2012, found by both Drs. Ballas and Troncoso. Moreover, the ALJ did not consider that these sorts of dips/swings in mood are consistent with the bipolar affective disorder with which Plaintiff was diagnosed. Nor does the ALJ consider that Dr. Ballas' assessment was supported by Dr. Troncoso's treatment notes.
Instead, the ALJ determined that Plaintiff was disabled as of July 10, 2015 because Dr. Reitano issued his opinion on that date. (Id. at 842, see id. at 1466-69.) Although the opinion of a treating medical source "may be afforded controlling weight" on some issues, independent review is required on issues that are reserved to the Commissioner, such as the question of Plaintiff's disability. See Breen v. Comm'r Soc. Sec., 504 Fed. App'x 96, 99 n.3 (3d Cir. 2012). This is especially true here, where Dr. Reitano did not actually opine that Plaintiff's disability began on July 10, 2015. "The critical date is the date of onset of disability, not the date of diagnosis." Moses v. Apfel, 1998 WL 717392, at *6, 1998 U.S. Dist. LEXIS 15182, at *15 (E.D. Pa. Sept. 23, 1998)
Notably, in his 2015 RFC assessment, Dr. Reitano makes findings regarding Plaintiff's inability to work because of his mental health impairments that were quite similar to those Dr. Ballas made in 2012. (Compare id. at 828-31 with id. at 1466-69.) Furthermore, the ALJ acknowledged that Plaintiff's treatment record with Dr. Rivas "shows a progressive worsening of his symptoms" from February 2014 onwards. (Id. at 842.) Part of the ALJ's decision to credit Dr. Reitano's opinion was that Dr. Sklaroff's October 2015 opinion was consistent with that of Dr. Reitano: that Plaintiff's mental impairments met listing severity. (Id. at 1530-32.) Dr. Sklaroff did not, however, provide an onset date. (Id. )
The ALJ did not adequately account for her apparent decision to discount record medical evidence of Plaintiff's "slowly progressive impairment[ ]"-bipolar affective disorder-between 2009 and 2015. Plaintiff's bipolar disorder was diagnosed in March 2014, but his treatment notes with Dr. Rivas show his symptoms of mood swings, aggression, hallucinations, and instability presented as early as February 2014. Dr. Rivas' intake form reveals that Plaintiff was already in the midst of a "3-4" month downward cycle when he appeared for treatment in February 2014. (R. 1473.) Earlier treatment records from 2011 through 2013 likewise show fluctuating periods *434 of stability and instability, likely consistent with Plaintiff's slowly progressing bipolar disorder.
In these circumstances, the ALJ's decision to choose Dr. Reitano's opinion date as the date Plaintiff's disability began was arbitrary and unsupported by substantial evidence. The ALJ overly relied on the 2010 RFC assessment, did not consider that much of the medical evidence is indeed consistent with Plaintiff's alleged onset date, and did not account for the evolving nature of Plaintiff's ongoing and progressive mood disorder. Accordingly, after reviewing the relevant medical evidence and the ALJ's summary, I find that the ALJ's determination of a July 10, 2015 disability onset date was not supported by substantial evidence, did not apply the SSR 83-20 factors, and did not have a convincing rationale.
Plaintiff's Onset Date
After conducting a review, I may "affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984). Where "substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits," I may choose to award Plaintiff with benefits rather than remand to the ALJ to consider new evidence. Id. at 221-22.
There is substantial evidence on the record to indicate Plaintiff's disability onset date is earlier than July 10, 2015. Dr. Ballas' May 2012 RFC assessment and Dr. Rivas' March 2014 diagnosis of Plaintiff's bipolar disorder both point to a substantially earlier onset date than the one chosen by the ALJ. In these circumstances, I will reverse the ALJ's decision to set Plaintiff's onset date at July 10, 2015 and remand to the ALJ to determine whether Plaintiff's alleged onset date of October 17, 2009 is consistent with the medical evidence, as directed by SSR 83-20. If not, the ALJ should determine at what date "it is most reasonable to conclude from the evidence" that Plaintiff's mood disorder "was sufficiently severe to prevent [him]" from employment for a continuous year. SSR 83-20.
C. Plaintiff's Hepatitis C and Severe Fatigue
Plaintiff also objects that the ALJ erred in rejecting the opinion of Dr. Vishal Patel (Plaintiff's treating hepatologist), on the issue of Plaintiff's severe fatigue caused by his Hepatitis C. (Pl.'s Objs. 23-30.) Plaintiff is partially correct.
Plaintiff was first diagnosed with Hepatitis C in September 2009, but it was listed as asymptomatic. (Id. at 306, 308, Doc. No. 8-8.) In November 2009, his Hepatitis C is noted as "stable." (Id. at 603.) On July 27, 2015, Dr. Patel wrote to the Administration about Plaintiff's chronic Hepatitis C diagnosis, as well as his "anxiety, asthma, abnormal iron saturation, elevated ferritin and hypertension." (Id. at 1470.) Dr. Patel wrote that:
The severe fatigue and overall weakness that [Plaintiff] experiences are consistent with and explained by our diagnosis of chronic viral hepatitis C. This fatigue and weakness prevents [Plaintiff] from being able to undertake and persist toward completion of many basic exertional activities th[at] he had been able to pursue before the onset of this disease. The fatigue requires him to be at complete rest during the course of the day.
(Id. ) Dr. Patel noted that he had prescribed Plaintiff with a course of Harvoni. (Id. ) In a follow-up letter dated October 30, 2015, Dr. Patel wrote that Plaintiff has started his Harvoni treatment and noted that it had "common side effects" of "tiredness, fatigue and nausea." (Id. at 1529.)
*435 Moreover, Dr. Patel wrote that Plaintiff would likely experience fatigue and weakness as a result of his underlying Hepatitis C, and thus "this may require at times during the day complete rest of a patient who experiences this fatigue." (Id. )
The ALJ read Dr. Patel's follow-up letter to mean that he "does not attribute any of these symptoms specifically to the claimant." (Id. at 840.) The ALJ thus found that Plaintiff's complained of "severe fatigue" had no support in his treatment records. (Id. ) The ALJ also believed that Dr. Sklaroff's opinion corroborated this conclusion. (Id. ) Dr. Sklaroff apparently believed that Plaintiff's elevated ferratin and abnormal iron saturation"could be hemochromatosis," which "does not affect functioning" or "require rest." (Id. at 1532.) Dr. Sklaroff thus did not consider Plaintiff's actual diagnosis of Hepatitis C when concluding that Plaintiff would not require rest; he considered only whether an additional diagnosis of hemochromatosis would. Regardless, the ALJ reviewed Plaintiff's medical records for reported symptoms of fatigue before 2015 and did not find any. (Id. at 840-41.)
The evidence of fatigue to which Plaintiff points in his Objections does not prove that the ALJ's conclusion was erroneous. (Pl.'s Objs. 27-28.) Some of this "evidence" of his Hepatitis C fatigue pre-dates his Hepatitis C diagnosis. (See R. at 266.) Other notations are clearly in the context of Plaintiff's lumbar issues. (See id. at 205.) Another piece of evidence Plaintiff offers-that he was observed to suffer from weakness-explicitly notes on the same page that Plaintiff "denies fatigue," and is actually a notation regarding his back pain. (Id. at 820.) Plaintiff's report in February 2014 of "running out of energy" is in the context of his depressive illness. (Id. at 1267.) Plaintiff's testimony regarding his symptoms of fatigue, weakness, and dizziness are from his October 21, 2015 hearing, and is thus consistent with the timing of Dr. Patel's letter. (Id. at 870-71.) Dr. Reitano's July 2015 conclusion that Plaintiff could not work without rest periods is again consistent with the timing of Dr. Patel's July 2015 letter.
Although there are consistent and extensive notations of Plaintiff's insomnia and trouble sleeping from 2008-2011, there is little to no record evidence from before 2015 of the type of fatigue mentioned by Dr. Patel. Accordingly, although I agree that Plaintiff suffered from severe fatigue caused by his Hepatitis C, such a finding will likely not increase his disability award.
In these circumstances, I will sustain Plaintiff's objections in part, ruling that the ALJ erred in finding that Plaintiff did not suffer severe fatigue from his Hepatitis C as of July 27, 2015. I do not agree, however, that the ALJ erred in finding the medical record did not contain evidence of Plaintiff's fatigue before this date. Nonetheless, I will remand to the ALJ for a hearing on Dr. Sklaroff's interrogatory responses and to review the medical record to determine if Plaintiff's diagnosis of Hepatitis C and resulting severe fatigue affects his disability onset date.
IV. CONCLUSION
In sum, I will sustain Plaintiff's objections in part. I find that the ALJ erred in determining Plaintiff's onset date was July 10, 2015. Accordingly, I will reverse the Commissioner's final decision on Plaintiff's onset date. Although Plaintiff argues that no remand is necessary because the record is complete and supports his claimed onset date, I will nonetheless remand for further proceedings consistent with this Order. Although the record evidence could very easily support the finding of an October 17, 2009 onset date, that evidence is sufficiently *436 extensive to benefit from further proceedings before the ALJ.
Moreover, the ALJ erred in finding that the Plaintiff did not suffer from severe fatigue as a result of his Hepatitis C in July of 2015. The ALJ further erred by denying Plaintiff a hearing on Dr. Sklaroff's interrogatory responses. Accordingly, I will adopt Judge Hart's Report and Recommendation on this issue, and remand to the ALJ for a hearing on Dr. Sklaroff's interrogatory responses and further proceedings consistent with this Order. An appropriate Judgement follows.
JUDGMENT
AND NOW , this 27th day of November, 2018, after careful and independent review of the initial Complaint (Doc. No. 3), the Commissioner's Answer (Doc. No. 9), the administrative record (Doc. No. 8), and upon consideration of Plaintiff's Brief and Statement of the Issues in Support of Request for Review (Doc. No. 14), the Commissioner's Response (Doc. No. 18), Plaintiff's Reply (Doc. No. 24), Magistrate Judge Jacob H. Hart's Report and Recommendation (Doc. No. 27), and Plaintiff's Objections (Doc. No. 29), it is hereby ORDERED as follows:
1. Plaintiff's Objections (Doc. No. 29) are SUSTAINED in part ;
2. The Report and Recommendation (Doc. No. 27) is APPROVED AND ADOPTED in part ;
3. Plaintiff's Request for Review (Doc. No. 14) is GRANTED in part and DENIED in part ;
4. Plaintiff's Request for Oral Argument on Plaintiff's Objections (Doc. No. 31) is DENIED as moot ;
5. The final decision of the Commissioner of Social Security is REVERSED and the matter is REMANDED in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. On remand, the ALJ shall:
a. Analyze the factors in SSR 83-20 to determine whether Plaintiff's alleged disability onset date of October 17, 2009 is consistent with the medical evidence;
b. If not, determine on what date "it is most reasonable to conclude from the evidence" that Plaintiff's mood disorder "was sufficiently severe to prevent [him]" from employment for a continuous year. SSR 83-20;
c. Hold a hearing on Dr. Sklaroff's interrogatory responses; and
d. Determine whether the evidence supports an earlier onset date in consideration of all the record evidence, including Plaintiff's severe fatigue resulting from his Hepatitis C.
6. The CLERK OF COURT shall ENTER JUDGMENT in favor of Plaintiff and against the Commissioner; and
7. The CLERK OF COURT shall CLOSE this case.
AND IT IS SO ORDERED.